WASHINGTON AND SANDERS TAYLOR, PLAINTIFFS IN ERROR, v. JOHN DOE, ex dem. AUSTIN MILLER.

By the laws of Mississippi, deeds of trust and mortgages are valid, as against creditors, and purchasers only from the time when they are recorded.

A judgment is a lien from the time of its rendition.

Therefore, where a judgment was rendered, in the interval between the execution and recording of a deed, it was a lien upon the land of the debtor.

A *fieri facias*, being issued upon this judgment, was levied upon the land; but, before the issuing of a *venditioni exponas*, the debtor died.

It was not necessary to revive the judgment by a *scire facias;* but the sheriff who had thus levied upon the land could proceed to sell it, under a *venditioni exponas;* and a purchaser, under this sale, could not be ejected by a claimant under the deed given by the debtor.

THIS case was brought up, by writ of error, from the District Court of the United States for the Northern District of Mississippi.

It was an ejectment, brought· in the court below by Miller, against the Taylors, who were the purchasers of the property in question at a sheriff's sale.    The controversy was respecting the validity of the sale, the circumstances attending which are· detailed in the opinion of the court.    The following table shows the date of the various transactions.

Crane was the owner, and in possession of the property.

September 21, 1840, Crane made a deed of trust to Pitser Miller.

November 17, 1840, a judgment was given against Crane, at the suit of some third person, for $6000, in the Circuit Court of the county of Marshall.

Upon this judgment a *fieri facias* was issued, returnable to the first Monday in June, 1841.

December 7, 1840, the deed from Crane to Pitser Miller was recorded.

April 16, 1841, the execution was levied upon the land in controversy.    Whereupon Crane claimed the benefit of the valuation law of Mississippi.    The property was valued at six thousand dollars, but two thirds not being bid, the papers were returned to the clerk's office.

February 20, 1842, Crane died.

May 30, 1842, twelve months after the return of the papers, a writ of *venditioni exponas,* tested on the first Monday in March, 1842, was issued, commanding the sheriff to sell the land.

August 17, 1842, the sheriff sold the land to the Taylors; and on the same day made them a deed for it and put them in ·possession.

April 20, 1843, Pitser Miller put up the land for sale under the deed of trust from Crane, when Austin Miller became the purchase, and received a deed from· the trustee.

In October, 1847, Miller brought his action of ejectment against the Taylors in the District Court of the United States for the Northern District of Mississippi, Miller being a citizen of the State of Tennessee.

In December, 1849, the cause came on for trial.

On· the foregoing facts, which were established by legal testimony, the court charged the jury, that if they believed, from

the evidence in the case, that the *venditioni exponas*, by virtue of which the land in controversy was sold, and under which the defendants became purchasers thereof, was issued and tested after the death of said William Crane, and without a revival of the judgment by *scire facias*, then such sale and purchase were void, and conferred no title on defendants.

The defendants excepted and brought the case up to this court.

It was argued by *Mr. Volney E. Howard*, for the plaintiffs in error, and by *Mr. Vinton* and *Mr. Stanton*, for the defendants in error.

*Mr. Howard*, for plaintiffs in error.

The only question involved in this case is, whether an execution sale is void when the party defendant died before the test of the *venditioni exponas*, and the judgment was not revived by *scire facias*.

1. A judgment in Mississippi is a lien upon all property from the date of its rendition. In this case the judgment was rendered previous to the conveyance, and the purchaser took it subject to the lien and the right of the judgment creditor to sell. Pickens *v.* Marlow, 2 S. & M. 428 ; 3 Id. 67 ; 9 Id. 9.

2. Sheriffs' sales in Mississippi, under executions issued after the death of the defendant, and without revival by *scire facias*, have always been held only voidable, and not void, and therefore sustained in actions of ejectment. Smith et al. *v.* Winston et al. 2 How. Miss. R. 607 ; 5 How. Miss. R. 256 ; 9 Smedes & M. 218.

3. This being an important property rule in Mississippi in relation to real estate, it is submitted, that this court, under its former decisions, will follow the interpretation of the Supreme Court of Mississippi, especially the late case of Shelton *v.* Hamilton, which is printed as part of this brief, so far as it relates to this principle, and the certified manuscript copy, herewith filed. 5 Cranch, 22 ; 2 Cranch, 87 ; 1 Wheat. 27 ; 2 Wheat. 316 ; 10 Wheat. 152 ; 12 Wheat. 153 ; 4 Peters, 127 ; 5 Id. 151.

The counsel for the defendants in error contended, that the decisions are uniform and almost uninterrupted, to the effect that a levy on real estate does not divest the title of the judgment debtor, or satisfy the execution, as in the case of a levy on personal goods. The land, therefore, descends to the heir in spite of the levy ; and in order to subject it by a process tested after the death of the ancestor, the heir must be made a party by *scire facias*. Erwin's Lessee *v.* Dundas et al. 4 How. Sup.

Ct. R. 58; 6 Ala. Rep. 658; 2 How. Miss. R. 601; 5 Id. 629; Davis *v.* Helm, 3 S. & M. 17; Smith *v.* Walker, 10 Id. 589; 3 Ala. 204; 7 Id. 660.

The writ of *venditioni exponas* is a proceeding *in personam*, not *in rem.* It must have persons for parties. Against a dead man it is wholly void. Gwin *v.* Latimer, 4 Yerger, 22; Overton *v.* Perkins, 10 Id. 328; Rutherford *v.* Reed, 6 Humph. 423; Samuels *v.* Zackery, 4 Iredell, 377; Baden *v.* McKeene, 4 Hawks, 279; Woodcock *v.* Bennett, 1 Cowen, 711; Stymets *v.* Brooks, 10 Wendell, 206.

In Hughes *v.* Rees, 4 Meeson & Welsby, 468, the court say the *venditioni exponas* is "part of the *fieri facias*," "a species of *fieri facias*," "a writ directing the sheriff to execute the *fieri facias* in a particular manner."

The act of 1840, called the valuation law of Mississippi, did not alter these principles. It enacted, that if lands levied on would not sell for two thirds of their appraised value, the sheriff should return the *fieri facias*, with all proceedings, to the court; and if the judgment should not be satisfied after twelve months, a *venditioni exponas* should issue. The sheriff is not authorized to sell without this new process. It is the writ alone which vests in that officer the power to sell and convey lands. Natchez Ins. Co. *v.* Helm, 13 Smedes & Marsh. 182.

The cases in Peck's Rep. 80; 4 Bibb, 345, and 2 Bay, 120, quoted as being opposed to the foregoing authorities, are not in fact such. The case of Toomer *v.* Purky, 1 Constitutional R. 323, would seem to be in opposition to the current of authorities; but it must be regarded as having been decided without due consideration.

Mr. Justice DANIEL delivered the opinion of the court.

This was an action of ejectment, instituted in the court below by the plaintiff, a citizen and inhabitant of the State of Tennessee, against the defendants, citizens and inhabitants of the State of Mississippi; and the facts proved in the cause and about which there appears to have been no contrariety of opinion, were to the following effect. That the plaintiff and the defendants derived their titles from one William Crane, who was at one time seized and possessed of the demised premises. That being so seized and possessed, Crane conveyed the land, on the 21st of September, 1840, to one Pitser Miller, for the purpose of securing a debt in said conveyance mentioned; that this deed from Crane, after having been proved, was delivered to the probate clerk of the county wherein the land was situated, on the 7th day of December, 1840, and was on that day recorded. That

this land was afterwards duly advertised for sale under the trust above mentioned, was regularly sold in pursuance thereof, by the trustee, on the 20th day of April, 1843, to the lessor of the plaintiff, for the sum of $1,000, and conveyed to him by the trustee by deed which was acknowledged and recorded on the day and in the year last mentioned. That the defendants were in possession of the demised premises at the commencement of this action, and that the land in dispute was worth $4,000.

The defendants then proved, that on the 17th of November, 1840, a judgment was recovered in the Circuit Court of the county in which the demised premises are situated, against the said Crane, for the sum of $6,000; that, on this judgment, an execution was sued out against the goods and chattels, lands and tenements, of the said Crane, returnable to the 1st Monday in June, 1841, which execution, on the same day on which it was sued, came to the hands of the sheriff of the county, and was by him levied on the land in controversy on the 16th of April, 1841. That thereupon the said Crane claimed the benefit of the valuation law of Mississippi, and in pursuance of that law, the land was valued at six thousand dollars, and that being after such valuation advertised and offered for sale, and two thirds of the appraised value not having been offered for the said land, the execution and papers connected therewith were returned to the clerk's office of the court of the county, according to law; that after the expiration of twelve months, viz., on the 30th of May, 1842, a writ of *venditioni exponas*, tested on the 1st Monday in March, 1842, was sued out by the clerk of the county aforesaid, directed to the sheriff of said county, commanding him to sell the land which had been levied upon, and on which the appraisement and suspension had been taken, as before set out; that, by virtue of this writ of *venditioni exponas*, the said sheriff, after duly advertising the land, sold the same on the 17th day of August, 1842, when the defendants became the purchasers thereof, at the price of $800, and having paid the purchase-money, the sheriff conveyed to them the said land by a deed in due form of law, which was acknowledged and recorded on the 17th of August, 1842, the date of the said deed; that under this deed the defendants were in possession of, and claimed title to, the land in question.

The plaintiffs' lessor then proved that Crane, upon an execution against whom the land had been seized, and at whose instance that execution had been stayed under the provisions of the statute, departed this life on the 20th of February, 1842, during the twelve months' suspension of the proceedings on that process, and before the test and suing out of the *venditioni ex-*

*ponas* under which the land had been sold, and purchased by the tenants in possession.

Upon the foregoing facts, the judge charged the jury, that if they believed from the evidence, the *venditioni exponas*, by virtue of which the land in controversy was sold, and under which the defendants became the purchasers thereof, had been sued out and tested after the death of Crane, and without a revival of the judgment by *scire facias*, then the sale and purchase were void, and conferred no title on the tenants in possession.

With reference to the proofs in this case, and the charge pronounced thereon by the court below, a single question only has been discussed by the counsel, and it is certainly that which must be decisive upon the judgment of this court, viz., the question involving the validity of the proceedings upon the judgment against Crane, and the legal consequences flowing from those proceedings. By the statute of Mississippi (vide Howard & Hutchinson's Collection, c. 34, sect. 5, p. 344,) deeds of trust and mortgages, are valid as against creditors and purchasers, only from the period at which they are delivered to the proper recording officer. By the law of the same State (vide How. & Hutch. c. 47, sect. 43, p. 621,) a judgment *proprio vigore* operates a lien upon all the property of a defendant from the time that it is rendered.

The trust deed from Crane to Pitser Miller, not having been recorded until after the judgment against Crane, and the sale under the trust not having been made until after the lapse of more than three years from the judgment, and not until two years after the levy of the execution upon the lands under that judgment, the title derived from the sale and conveyance by the trustee, must, by the operation of the statutes above cited, be inevitably postponed to the rights of the claimant under the judgment, unless the latter, with the proceedings had thereon, can have been rendered null by some vice or irregularity which deprived them of legal validity.

It is insisted, for the lessor of the plaintiff that such vice and irregularity are manifested by the facts which controlled the charge of the judge of the court below, viz., the suing forth of the *venditioni exponas* and the proceedings upon that process, after the death of the defendant in that judgment, and without any revival thereof against the representative of that defendant.

In considering the objection thus urged, it must be taken as a *concessum* on all sides that, by the law of Mississippi, the judgment against Crane operated as a lien on his land, and that by the execution and levy, the fruits of that judgment, the lien had attached particularly and specifically upon the subject of

Taylor v. Doe.

its operation. So far then as the rights of the parties to the judgment and the subject-matter to be affected by those rights were concerned, every thing was determined; all controversy was closed. The law had taken the subject entirely to itself, to be applied by its own authority and its own rules. Did the indulgence of appraisement, and the temporary suspension allowed in a certain predicament to the debtor, alter the rights or obligations of the parties, or change the status, or liability, or appropriation, of the subject which the law had already taken into its own hands? To admit of any conclusions like these, would be to open again controversies already closed, and to wrest from the fiat of the law, the subjects it had specially and absolutely applied. The privilege of appraisement and suspension was in itself a great indulgence; it would become an opprobrium to justice, if it could be converted into a means of abrogating rights which she had expressly and deliberately conferred. The appraisement and suspension wrought no change in the relative position of the parties, it neither released nor weakened the hold taken by the law on the subject, but only completed the proceedings on the conditions which the statute had prescribed, the operation it had begun, and which it had the regular authority to fulfil. We regard the *venditioni exponas* in this case merely as a continuation and completion of the previous execution by which the property had been appropriated, and was still in the custody of the law, and not as a separate, independent, much less an original proceeding, the offspring or result of a distinct and farther adjudication. This interpretation is in conformity with the meaning and purpose of the process of *venditioni exponas*, and with the terms of that writ as provided in the statute of Mississippi, which runs in the following language, viz. (Vide How. & Hutch. Col. c. 42, sect. 18.) " We command you that you expose to sale those goods and chattels, lands and tenements of A B, to the value of    which, according to our command, you have taken, and which remain in your hands unsold as you have certified to our judges, of our Court, to satisfy C D the sum of    whereof in our said court he hath recovered execution against the said A B by virtue of a judgment in the said court, &c.," thus showing the consummation of the right of the plaintiff, the divestiture of possession of the defendant, and the transfer of that possession to the custody and possession of the law by the levy of the previous execution. Considering this to be the situation of the property, and regarding the force of the judgment and levy as not having been affected by the appraisement and suspension of sale, it becomes unimportant to investigate the results attempted to be deduced from the fact

25 *

that the *venditioni exponas* was sued out after the death of the defendant Crane. According to our view this fact would have been immaterial both upon the rules of the common law and upon the provisions of the stat. of the 29 Car. 2, adopted in many of the States ; for by the former the execution would have been valid if tested before the death of the defendant, and by the statute if delivered to the officer before that period; but in this instance not only did the lien which could be enforced by *fieri facias* exist from the date of judgment, according to the statute of Mississippi, but it was actually consummated by seizure in the lifetime of the defendant in the judgment. Upon the point of the validity of an execution against the personalty, if tested and sued in the lifetime of the debtor, numerous authorities might be cited from the English decisions and from the adjudications of the State courts, as well as the decision of this court in the case of Erwin's Lessee *v.* Dundas et al. in 4 How. Rep. 58, in which many of the cases have been reviewed. A particular reference to the cases upon this point, however, is not deemed important in the present instance, though it may not be altogether out of place to refer to several decisions of the Supreme Court of Mississippi ruling a doctrine which would go very far in sustaining the title of the defendants in the ejectment, admitting that the validity of the first execution and levy on the judgment against Crane was a matter regularly open for examination. Thus the cases of Smith and Montgomery *v.* Winston and Lawson, 2 How. Miss. Rep. 601 ; of Drake et al. *v.* Collins, 5 Id. 253; and of Harrington *v.* O'Reilly et al. 9 Sm. & Marsh. 216, have laid it down as the law of Mississippi in relation to real as well as personal estate, " that a sale made under an execution which issued without a revival of the judgment is not absolutely void but voidable only, and cannot be avoided collaterally."

This last question this court do not feel themselves now called upon to settle; considering the levy under the first judgment against Crane and the lien thereby created as having been consummated, and the property placed by the proceedings in the custody of the law, they regard the title of the defendants below derived from the judgment, the levy of the *fieri facias*, and sale under the *venditioni exponas*, as regular and valid, and one which should have been sustained. The judgment of the District Court is therefore reversed, and the cause remanded to that court to be tried upon a *venire facias de novo*, in conformity with this opinion.

### Order.

This cause came on to be heard on the transcript of the record from the District Court of the United States, for the North-

ern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said District Court, with directions to award a *venire facias de novo,* and to proceed therein in conformity with the opinion of this court.