Ritchie v. Higginbotham.

JOHN RITCHIE v. JOHN HIGGINBOTHAM.

1. FI. FA. EXECUTION, *Sale Under; Confirmation.* Real estate levied upon under one execution in the form of an ordinary *fieri facias,* may be sold without a relevy under an *alias* execution in the same form and without any clause of *venditioni exponas* in it; and a sale thus made should, if there be no other objections thereto, be confirmed.

2. CONFIRMATION OF SALE, *Invalid Ground for Refusing.* Where executions upon three separate judgments in the same court, against the same party, are simultaneously issued and placed in the hands of the sheriff and by him levied upon the same property, *held,* that it is no valid ground for refusing a confirmation of the sale made thereunder, that it appears from the returns of the sheriff that only one appraisement was made of the property so levied upon under the three executions.

*Error from Shawnee District Court.*

AT the January Term, 1880, of the district court, plaintiff *Higginbotham* obtained certain judgments and final orders against defendants *Ritchie* and another, and the former brings the case here. The nature of the action, and the facts, appear in the opinion.

*W. P. Douthitt,* for plaintiff in error.

*Case & Moss,* and *Webb, Johnson & Ryan,* for defendant in error; *Wm. Higginbotham,* of counsel.

The opinion of the court was delivered by

VALENTINE, J.: Higginbotham recovered judgment against Ritchie and Walker, in the district court of Shawnee county.

Two other judgments were also recovered against Ritchie, in the same court. Executions were issued on each of these three judgments and placed in the hands of the sheriff, under each of which a levy on a large amount of property belonging to Ritchie was made—the levy in each case being identical. An appraisement of the property was made under the levy in the Higginbotham execution, but not under the levies of the other two. Nothing further was done under these three executions, and upon the return day they were returned by the officer, with the levies undisposed of. On the 17th day of November, 1879, an *alias* execution was issued on each of these three judgments, and placed in the hands of the officer simultaneously. These executions were ordinary *fieri facias* executions, and were in the ordinary language used in such executions: "These are therefore to command you, that of the goods and chattels, lands, tenements and chattels real, of the said T. H. Walker and John Ritchie, you cause to be made the debt," etc. There was no order for the sale of property previously levied upon; no clause of *venditioni exponas* in any of them, nor indeed any reference whatever to a former levy. Only incidentally and from the statement in respect to costs, does it appear that any prior executions had been issued. The sheriff under these executions made his returns thereon, that he was unable to find any goods, chattels, or personal property of either Walker or Ritchie on which to levy, and to use his exact language, "I did, on the 18th day of November, 1879"—one day after the receipt of these executions by him—"under and by virtue of this execution, and to satisfy the same, the levy made upon a former execution in this case, to which this return has special reference, is hereby continued by virtue of this writ," etc. He thereupon, without further appraisement, advertised and sold, under each execution, the property levied upon, to Higginbotham. Ritchie tendered in open court the amount of Higginbotham's bids on one of the tracts of land sold, and moved to set aside the sale of that tract, which motion was overruled, the sales confirmed, and which order and rulings of the court Ritchie now asks may be reviewed and reversed.

The principal question in this case is, whether the levy made under the prior execution was continued over and sufficient to justify a sale under the last execution. Counsel contends that the last execution directed the sheriff to levy; that the execution was not in form a *vendi;* and that to justify a sale under a second writ, without a second levy, there must be a distinct and direct command in the writ to sell the property previously levied upon. We cannot agree with counsel in these views. Section 451, to which he refers, refers solely to a levy upon goods and chattels. If for any reason they are not sold upon the execution under which they were levied upon, that section provides for the issue of a writ, which, while not called a *vendi,* is doubtless its equivalent. Section 452 probably refers only to such writs as are named in the previous section; yet if it were held to extend to executions upon which levies upon real estate are made, it would throw little light upon this question, and would simply show that where a *vendi* was ordered out for the sale of real estate, it would be perfectly proper to include in it the ordinary command of a *fi. fa.* to make the debt. Section 463 reads as follows: "If lands or tenements levied on as aforesaid are not sold upon one execution, other executions may be issued to sell the property so levied upon." Now this language does not name the *fi. fa.* or *vendi* as used under the old common-law practice, but speaks of executions, and from the form of the expression evidently contemplates writs of the same nature. It says when "not sold upon one execution, other executions may be issued." The natural inference from such language is, that writs of the same kind and form are referred to. That, we think, is the fair and reasonable construction of the language. When we add to that the fact that under the old common-law practice the *vendi* ran generally only to personal property, or was used as a rule only in a levy upon personal property, it is evident that the language of our statute should not be construed as providing for a *vendi* upon a levy in the case of real estate, unless such de-

parture is clearly recognized in the statute. In Herman on Executions, § 35, it is said that "a *venditioni exponas* is a writ by which the sheriff is commanded to sell goods and chattels, and in some cases lands, which he has taken in execution by virtue of a *fi. fa.*, and which remain in his hands unsold. The object of this writ, so far as it regards personal property, is to force the sheriff to sell when he has returned a levy unsold for want of buyers, and to bring him into contempt for not selling it. He cannot therefore again return 'Not sold for want of buyers.'" To the same effect is the definition given by Bouvier in his Law Dictionary. (2 Bouvier, 633, citing several authorities.) Freeman, in his work on Executions, § 57, says: "The officer is bound to return the writ of *fi. fa.* by the return day thereof, and is liable to suit if he does not return it either executed or with a sufficient excuse for not returning it. In case he returns that he has made a levy and gives sufficient excuse for not selling the property levied upon, then the plaintiff may, by procuring a writ of *venditioni exponas*, compel him to proceed with the same. This writ is therefore properly defined as the writ which *compels* an officer to proceed with the sale of property levied upon under a *fi. fa.*" These citations show that a *vendi* was usual only when the levy was upon personal property, and that while in some states it was resorted to, even in the case of a levy upon real estate, such is not the true practice unless specifically directed by the statute. As we have seen, our statute nowhere names a *vendi*, and the only section which in terms provides for anything equivalent thereto, is one which refers to a levy upon personal property, so that whether we rest upon the common law or upon our own statute, it is obvious that a *vendi* in case of levies upon real estate is not a necessity for a valid sale after the return of the first execution. It is unnecessary to hold that such a writ is not authorized, and would not be valid even where the levy was made upon real estate. It is enough for the purpose of this case to hold that such a writ is not compulsory; and that an ordinary execution similar to the old *fi. fa.* is sufficient to

support a sale made under a levy upon a previous execution. That a levy under one execution is sufficient to sustain a sale upon a subsequent execution, is in terms provided for by the statute. (Sec. 463, *supra;* see also *Boughton v. Lord,* 10 Ohio St. 454.) Indeed, where the statute makes the judgment a lien on the real estate, it is difficult to perceive why any levy should be made or required. (*Judd v. Houston,* 12 Ired. 118; *Wood v. Colvin,* 5 Hill, 228; Freeman on Executions, § 280.) A judgment binds personal property and real estate without the county from the time that it is seized in execution, (Code, § 444;) but as to real estate within the county, the judgment operates as a lien from the day of its rendition, and in some cases from the first day of the term in which it is rendered. ( Code, § 419.) As to the latter lands, the levy neither makes nor strengthens the lien, and its particular necessity is not clear; however, as the statute provides for it, doubtless it must be made, but no great stress need be laid upon it as an essential fact in the preservation of defendant's rights. The levy once made, the statute provides that it is good for a sale under a second execution, and there being nothing naming a different form of the second execution, the same form may properly be resorted to. It follows, therefore, that the sale, so far as this question was concerned, was perfectly regular.

A second proposition of counsel is, that as there were executions issued under three separate judgments, and a levy made upon the property under each execution, and a sale in the same way, there should be a separate appraisement under each execution, or the sale must be adjudged irregular. It may be sufficient to say, that if the sale is good under one execution, it ought to be sustained; that if there is one valid writ properly executed, a purchaser ought to be enabled to rely upon that; but beyond that, where there are three separate writs placed in the hands of the officer at the same time, commanding the same thing, and under these three writs a levy is made upon the same property, we think it a useless expense and an unnecessary burden upon the defendant to compel him to pay the costs of three several appraisements. (*Doug-*

*las v. McCoy,* 5 Ohio, 522.) We think this objection must also fail. And finally, we remark that the court has not the same discretion that the chancellor had in approving or disapproving a sale. The party who bids and is awarded the purchase at a sheriff's sale upon an ordinary execution, has rights, and this whether he be a plaintiff in the execution, or a stranger. If he bids in good faith and the proceedings are regular, he is entitled to the property, and the court may not refuse him a confirmation of the sale and deed. In this case we can but think the proceedings were regular, and the sale should therefore be confirmed. The plaintiff has waited for years. His judgment was in 1875, and in 1879 this sale; and after this long delay we think the defendant is not in a position to make any great claim upon the equitable consideration of the court.

The ruling of the district court was correct, and must be affirmed.

All the Justices concurring.