*476 The opinion of the court was delivered by
Brewer, J.:
This is an action brought to review a ruling-of the district court of Leavenworth county, overruling a motion to set aside, and sustaining a motion to confirm a sale. The facts, as disclosed by the record, are these: On the 18th of February, 1873, Stewart "Van Vliet recovered a personal judgment against Madison Mills, in the district court of Leavenworth county, for the sum of $2,575.21. On the 28th day of April, 1873, Madison Mills died, intestate, leaving a widow and children. On the 18th day of April, 1873, ten days before his death, Madison Mills and wife conveyed to Robert Halsey by quitclaim deed several hundred acres of land in Leavenworth county, among which was the quarter-section in controversy in this action. On the 19th day of May, 1873-, A. C. VanDuyn was duly appointed administrator of the estate of Madison Mills, by the probate court of Leavenworth county. He qualified, and has ever since acted, and still is-acting, as such administrator. On the 23d of August, 1873, and on the 6th day of July, 1874, and before any revivor, of said judgment, executions were issued thereon. On the 11th of October, 1875, the judgment was revived with the consent of the administrator, which order of revivor is in the words and figures following:
“It is therefore by the court here considered, ordered and adjudged, that this action, and the judgment heretofore, to wit, on the 18th day of February, 1873, rendered herein in favor of said plaintiff and against the said Madison Mills for the sum of $2,575.21, with interest thereon from that time until paid, at the rate of 10 per cent per. annum, and costs, and the costs of this proceeding, be and the same is hereby revived against the said A. C. Van Duyn, as administrator of the estate of Madison Mills, deceased, and that said judgment and interest, and costs of this proceeding, be paid in due course of administration of said estate.”
On April 2d, 1879, execution was again issued, and on the 22d of March, 1880, a fourth execution was issued and levied upon the land in controversy. On the 3d day of May the *477 land was sold under this execution, and this sale is the one which is now challenged. It may be remarked that no question is made as to the validity of the judgment, no exception taken to the regularity of the proceedings of the sheriff on the execution, so that if the execution was not a void writ and the land was subject to seizure under the execution, the motion to set aside the sale was properly overruled and the motion to confirm properly sustained. It may be further remarked, that if upon the face of the record the proceedings are all regular, the motion to confirm the sale goes as a matter of course, and extrinsic matters affecting the validity of the proceedings are settled in independent proceedings; and although on a motion to set aside a sale there is a larger latitude of inquiry, and the court may examine beyond the mere face of the papers, yet even then a decision upon the motion •either way is not a final adjudication, and the rights of the parties may be settled in a subsequent action. (Challiss v. Wise, 2 Kas. 193; White-Crow v. White-Wing, 3 Kas. 276.) In this latter case it was held that, while the court on a motion to set aside a sale could go beyond the face of the papers and examine questions outside those affecting the mere regularity of •the proceedings, yet that in the exercise of this power it must be guided by a reasonable discretion; and unless it appeared that that discretion had' been abused, it would follow that its ruling must be sustained. Turning now to the case before us, the plaintiff in error claims that the motion to set aside the sale should have been sustained upon several grounds, which we shall proceed to notice.
First. He claims that by the terms of the judgment .of revivor no execution could issue on the judgment, because in its conclusion it expressly provided that the judgment “be paid in due course of administration of said estate.” This it is insisted is an express limitation on the manner of the collection. This is a mistake; the language contains no restriction on the right to have execution. Doubtless its purpose was to assure the administrator that although the judgment was revived against him as administrator, no personal liability was *478 sought or asserted against him. It is simply an awkward and inartificial way of stating that the judgment revived is a judgment against the estate, and not against the administrator as an individual. Again, as appears from that part of the journal entry prior to that heretofore quoted, there were no conditions imposed by the administrator upon his consent to a revivor. It recites that he appeared in person and consented to the revivor. It discloses a general and unconditional assent to such revivor, so that if any limitations were introduced into the order of revivor, they were not so introduced as a condition of the assent of the administrator. But further, it may be doubted whether the statute contemplates any such thing as a conditional revivor. Section 439 of the code, which provides for a revivor after judgment, after prescribing the manner of revivor, closes with these words: “Such judgment may be rendered, and execution awarded, as might or ought to be given or awarded against the representatives, real or personal, or both, of such deceased party.” May, means must, or shall, when used in such connection. And where there is no condition imposed by the administrator, but simply a general consent given to a revivor, the revivor must be a simple revivor of the judgment, leaving its effect and the manner of its enforcement to be determined by the general rules regulating all similar judgments against like parties. So, while it does not seem that there was any intention by the language used to limit or restrict the manner of enforcing its orders, it is also clear that where the administrator made simply a general consent and imposed no conditions upon that assent, the revivor operates to place the judgment in the same position as though it had been regularly and originally rendered against the administrator.
Second. It is insisted that the judgment creditor lost his lien beyond the power of recovery by not reviving his judgment within one year from the death of the defendant therein; and that as Halsey from the time of his deed held the title burdened only with the lien of this judgment, the moment that lien ceased Halsey held the title free from any judgment lien, *479 and no subsequent action or consent on the part of the administrator could revive it as against his property. The case of Scroggs v. Tutt, 23 Kas. 181, is claimed by counsel to sustain this conclusion.
In that case (pp. 189, 190) we used this language: “But it may be said that by failing to revive his judgment he-loses his judgment lien. This is true; but if the estate is solvent, it makes but little difference. But if, for any reason, he wishes to preserve his lien, he should be required to revive his judgment within one year. There can be no hardship in this; while if he is allowed to revive his judgment at any remote and indefinite period in the future, it may work immense hardship.” We do not understand that decision, or the language used, as justifying the conclusion of counsel. In that case there was no consent to the revivor. It was-sought to be made after the lapse of a year; and we held that, a revivor then was impossible, without the consent of the administrator, which consent was withheld, and if the judgment could not be revived, it could not of course be enforced as a judgment, and such was the import of the language as above quoted. It was plainly intimated that the plaintiff might have some other remedy. He might in some cases maintain an action in the probate or district court on such a judgment, and there was no intention, as there was no necessity, to determine in the opinion in that case what rights he might have or enforce, in such other or further efforts to collect his debt. But here the administrator consented, and the judgment was revived. Such revivor, made with the consent of the administrator, after the lapse of one year, has the same effect as a revivor without such consent during the year. The death of the defendant does not wipe out the judgment nor destroy its vitality; it no more than, so to speak, suspends such vitality, or, in other words, prevents its enforcement from the lack of a party against whom process therefor can run; and even this effect is denied to it by some courts, as we shall hereafter see. It remains a judicial determination that, at the date of its rendition, the defendant *480 •owed certain obligations to the plaintiff, a determination conclusive as any other judicial determination, and a determination vesting certain absolute rights in the plaintiff. The ■death of the defendant may affect the time and manner of •its enforcement, but that is all; if it be revived, enforcement is restored; when revivor becomes impossible, then enforcement also becomes impossible;' but the matter of revivor is entirely distinct from that of lien, and only as indicated indirectly affects it. (Miami Mining Co. v. Halley, 7 Ohio, 11.)
Third. The third proposition of counsel is, that this revivor, to be effectual, or to justify process against the real estate, should be against the heirs of the deceased defendant; or, in case as here, he had sold the land prior to his death, against his grantee. This is a mistake. The judgment was simply a personal judgment, and as such his personal representative was the only proper party against whom to revive. Where the judgment ran directly against land, as in an action of ejectment, or an action to foreclose a specific lien, then it would be proper to make the heirs or the purchaser parties to the revivor. In other words, the revivor should be made against the parties who would have to be sued if the claim of the plaintiff had not been put in judgment before the death of the defendant. Now if this note had not been put in judgment before the death of Madison Mills, the plaintiff in suing on it would have brought this action against the administrator alone; so, in reviving such a personal judgment, it should be revived against the administrator alone. Whatever rights of lien attach to the judgment are mere incidents. The judgment does not run directly against any land, and the same incidents attach to the revived judgment as before.
Fourth. A fourth proposition is, that the judgment was in effect dormant, and the lien absolutely gone, at the time of the issue of the last two executions, and for this reason: the two executions, of date August 23d, 1873, and July 6th, 1874, were issued after the death of defendant, and before any revivor of the judgment; hence, it is said that they were nullities ; that therefore more than five years intervened between *481 the date of the judgment and the issue of the first execution having even color of validity. This is a question of considerable doubt, and in which the authorities are conflicting. Freeman, in his work on Executions, §35, uses this language: “The issuing of executions against sole defendants, bearing date after'their death, has also given rise to diverse decisions; but upon this point, the authorities are much more unevenly divided than upon that arising where execution has issued after the death of a sole plaintiff. Some of the authorities deny that the death of the defendant is an extinguishment of the power to issue execution; and affirm that a writ thereafter issued, without revivor of the judgment, though voidable, is not void. These authorities, while sustainable on principle, aré borne.down by the weight of opposing authority.” The authorities cited on the one side are from the states of Mississippi, Maryland, New Hampshire and Pennsylvania; on the other, from Ohio, North Carolina, Louisiana, Alabama, Tennessee, Indiana, Massachusetts, Illinois, and the supreme court of the United States. Upon this question, the members of this court are divided in opinion.
The writer believes that so far as affects the question of keeping alive the judgment, those executions cannot be considered nullities. While doubtful whether a sale under them could be upheld, even when collaterally attacked, and conceding that such a sale would be voidable and would be set aside upon a motion or other direct proceeding, he holds that this result follows alone from the fact that there is no party defendant in being whose property can be seized. He believes that the principle upon which^the issue of an execution keeps alive a judgment is, that thereby the plaintiff affirms its vitality, and that this principle is enforced whenever the plaintiff comes into court and causes an execution to be issued and placed in the hands of an officer, and that it is immaterial whether the defendant then has any property upon which the process may be levied, or whether by the death of the defendant there be any party in being against whom, the process may lawfully run. It is in either case equally an assertion by the *482 plaintiff that the judgment is unpaid, and that he is intending at some time and in some way to enforce its collection. But my associates are of a different opinion. They hold with the current of authority, that such an execution is an absolute nullity; that under it a sale is absolutely void, passing no-title; that it can be challenged in any collateral way, and that being an absolute nullity, it is powerless, not alone for upholding a sale, but also for keeping alive the judgment in behalf of the plaintiff. They hold that where a writ is void, it is void for all purposes, not only as against the defendant, but also as in favor of the plaintiff; that as the plaintiff cannot enforce a sale under it, neither can he thereby continue the judgment alive; and that something more is meant in keeping alive the judgment by the issue of an execution than a mere assertion on the part of the plaintiff that he believes-the judgment an existing and valid judgment, and means to collect it, and that there must also be an effort in good faith by the issue of valid process to make a collection, (see the case of Kelly v. Vincent, 8 Ohio St. 415,) and that when an execution is void, the causing it to issue cannot be regarded as a proceeding in good faith to collect the judgment. Entertaining these views, the majority of the court hold that the first and second executions were void, and that as the third execution was not issued until more than five years after the date of the judgment, that that execution must also be considered a nullity, (State v. McArthur, 5 Kas. 280;) that before the issue of such execution the judgment had become dormant; that the lien upon the real estate belonging to-the defendant at the date of the judgment was also gone, and therefore that Halsey held this land free and discharged from all lien of the judgment. Of course, it follows from this that the fourth execution was also null and void, and that an attempt under it to sell land belonging to Halsey cannot be sustained.
Fifth. It is further insisted by counsel for defendant in error, that as the judgment was properly revived on October 11th, 1875, such order of revivor is to be considered as a *483 new judgment, and that the third, and fourth executions, having been issued within five years of such order of revivor, were both valid executions, and that the lien of that judgment had never ceased. But we do not understand that such order of revivor has the eifect claimed. The same interest is represented by the defendant, whether he be the original party, or his administrator after his decease. The revivor is not an attempt to make a new and independent party a party to the judgment, so as to create what may be considered a new and independent judgment, but simply a proceeding to keep the one judgment alive, as a subsisting and valid adjudication against the single interest of defendant, by whomsoever that interest may for the time being be represented. It follows from these considerations, that the proceedings to. sell the land belonging to Halsey, under this fourth execution, were without authority of law, and the court erred in not setting them aside.
A motion was made in this case to dismiss this proceeding in error, on the ground of certain alleged defects in the record, and because it was claimed that the ruling of the district court, being a ruling to some extent resting in the discretion of the trial court, could not be reviewed in this way. We have examined all the points suggested on the hearing of this motion, and do not think any of them can be sustained. The order of the district court will therefore be reversed, and the case remanded with instructions to sustain the motion to set aside the sale.
All the Justices concurring.