## STATE ex rel. FIRST NAT. BANK et al. v. OGDEN, Judge.

No. 26453.   July 30, 1935.

Potterf, Gray & Poindexter, for petitioners.

R. Brett, for respondent.

RILEY, J. This litigation was begun in the year 1924, and a judgment based on promissory notes was obtained below, but reversed on appeal for error in exclusion of evidence. Hooven et al. v. First Natl. Bk. in Ardmore, 119 Okla. 193, 249 P. 322. Judgment was again obtained below and affirmed on review. Hooven v. First Nat. Bk., etc., 134 Okla. 217, 273 P. 257. A supersedeas bond had been given in the cause and judgment was rendered thereon against Charles W. Clay. Execution from the court below was issued on January 29, 1930, as against Clay and levied upon certain property, including the N. E. ¼ of section 28, township 5 south, range 1 east, Carter county, Okla. But Clay claimed the described property exempt as his homestead and moved to quash the levy. A temporary restraining order issued from the court below on March 8, 1930, and the sheriff by his return upon the execution so excused his failure to sell the described property so levied upon. Upon trial of the homestead issue, the late Judge Walden found against Clay, denied the motion to quash execution, but allowed his order to be superseded. After the cause was appealed Chas. W. Clay died, but the cause was revived in the name of R. H. Brett, administrator, etc. Thereafter the widow, Mary E. Clay, died and the cause was revived as to her. The last-mentioned judgment was affirmed in this court, thus the homestead issue was eliminated. Clay v. First Nat. Bk., 170 Okla. 225, 39 P. (2d) 64.

When the mandate was spread below, relators caused execution to issue as of the date January 24, 1935, but it was returned unsatisfied, whereupon another execution was issued and dated March 23, 1935, and on the same date relators moved for a reappraisement of the property upon the ground that since the last appraisement (January 29, 1930) the property has been producing oil and was thereby less valuable. There was response and motion to quash execution. The motion to reappraise was withdrawn, but on June 20, 1935, the respondent, Honorable John B. Ogden, as district judge, entered an order quashing execution and enjoining further execution in the cause.

On July 13, 1935, application was made to this court for mandamus A ground assigned for the issuance of the extraordinary writ is the failure and refusal of the trial court to enforce the mandate of this court. The ground assigned is rather broad. The mandate of this court in effect directed the trial court to "issue such process and to take such other and further action as may be in accord with right and justice and said opinion." Relators continued to seek their remedy on execution as against the lands of Clay, deceased, upon which levy had been made prior to his death. The trial court found as a matter of law that it was "without jurisdiction to enforce the execution upon the lands in question." In other words, it was apparently the view of the trial court that a judgment creditor under the facts and circumstances of this case must look to the probate court for satisfaction of the judgment, and that relief could not be afforded in the district court by sale of the land under execution.

We are familiar with the use of the writ as a means of enforcing a correct interpretation of the appellate court's mandate. State v. Smith, 138 Okla. 89, 280 P. 433:

"It is the province of this court to construe its own mandate in connection with its opinion, and, if it finds that the trial court has misconstrued the same, the mistake may be corrected by writ of mandamus from this court."

But this is not a case of misconstruction of mandate except in a broad sense. A more exact statement of the situation seems to us to be that, upon a remand of the appealed cause, the trial court declined jurisdiction by mistake of law, and declined to

proceed further by execution, but disposed of the case by enjoining issuance of process.

The rule is well settled in some jurisdictions that:

"Where a court declines jurisdiction by mistake of law, erroneously deciding as a matter of law and not as a decision upon the facts that it has no jurisdiction and either declines to proceed or disposes of the case" mandamus will lie from any higher court having supervisory jurisdiction. 38 C. J. 610; Golden v. Mitchell, 107 Kan. 1, 190 P. 785; Boone v. Dist. Court, 38 Idaho, 688, 224 P. 429.

And this is so notwithstanding the provisions of section 730, O. S. 1931, stating as to the writ, "It cannot control judicial discretion," for failure by error of law to afford a forum for the final and proper disposition of a cause after appeal is not a matter of discretion; and this is so notwithstanding the provisions of section 731, O. S. 1931, that:

"This writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law"

—for it cannot be said that the right of relators to appeal from the order and judgment of the trial court is adequate in view of the facts and circumstances of this cause. State ex rel. v. Pitchford, 68 Okla. 81, 171 P. 448; State v. Thompson (Neb.) 95 N. W. 47; State v. Holtcamp (Mo.) 181 S. W. 1007; Nunn v Robertson, 80 Ark. 350, 97 S. W. 293, Ann. Cas. 1913E, 1197; State v. Dist. Ct. (Mont.) 251 P. 1061; Osage O. & Ref. Co. v. Cont. Oil Co., 34 F. (2d) 585.

In fact, were it not for this function of the writ, a trial court so disposed by error or caprice might circumvent the judgment of the court of last resort.

The vital question involved is whether property of a judgment debtor, levied upon during his lifetime, but unsold, may be sold after the death of the owner under the same or under new execution.

Section 1246, O. S. 1931, provides:

"When any judgment has been rendered for or against the testator or intestate in his lifetime, no execution shall issue thereon after his death, except

"First. In the case of the death of the judgment creditor, upon the application of his executor or administrator, or successor in interests.

"Second. In the case of the death of the judgment debtor, if the judgment be for the recovery of real or personal property, or the enforcement of a lien thereon.

"A judgment against the decedent for the recovery of money must be presented to the executor or administrator, like any other claim. If the execution is actually levied upon any property of decedent before his death, the same may be sold for the satisfaction thereof, and the officer making the sale must account to the executor or administrator for any surplus in his hands."

Section 461, O. S. 1931, provides:

"If lands or tenements, levied on as aforesaid, are not sold upon one execution, other executions may be issued to sell the property so levied upon."

Under the exception last provided in section 1246, supra, a sale is authorized after death in pursuance of a levy before death, and under the provision of section 461, supra, the sale of the described land may be had under succeeding executions, because this land was levied upon according to law, but not sold on account of intervening litigation finally terminated favorably to the execution creditor. The land was bound from the time it was seized in execution. Section 441, O. S. 1931, so provides:

"All real estate not bound by the lien of judgment, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution."

This was the rule at common law, for under it the writ of "fieri facias" (the general execution, vol. 3, Words & Phrases, First Series, p. 2762, commanding literally "that you cause to be made," 20 C. J. 1121) could not issue upon a judgment, where the judgment debtor was dead, until the judgment had been revived by the writ of "scire facias." 34 C. J. 670; 23 C. J. 381. Such was the rule stated in Ransom v. Williams, 2 Wall. (U. S.) 313, 17 L. Ed. 803:

"By the common law the death of either party arrested all further proceedings in the case. If the death occurred before judgment, the suit abated. If there was but one defendant, and he died after judgment, no execution could issue unless it was tested before the death occurred. In such case it was necessary to revive the judgment by scire facias." Halsey v. Van Vliet, 27 Kan. 474.

However, the writ of venditioni exponas (sometimes called "vendi," directing: "You expose to sale" [66 C. J. 430], "* * * a writ directed to the sheriff commanding him to sell goods or chattels, in some states.

lands, which he has taken in execution by virtue of fieri facias and which remain unsold" [23 C. J. 618; Freeman on Executions, p. 85]) was available under the common law to judgment creditors to obtain the sale of property that had been levied upon by fieri facias during the debtor's lifetime. In such a case a revivor by scire facias was not required.

In Taylor v. Doe, 13 How. (U. S.) 287, 14 L. Ed. 149, it was held:

"A fieri facias, being issued upon this judgment, was levied upon the land, but before the issuing of a venditioni exponas the debtor died.

"It was not necessary to revive the judgment by scire facias; but the sheriff who had thus levied upon the land could proceed to sell it, under a venditioni exponas; and a purchaser under this sale could not be ejected by a claimant under the deed given by the debtor."

In the cited case this inquiry was made and answered:

"Did the indulgence of appraisement, and the temporary suspension allowed in a certain predicament to the debtor, alter the rights or obligations of the parties or change the status, or liability, or appropriation, of the subject which the law had already taken into its own hands? To admit of any conclusions like these would be to open again controversies already closed, and to wrest from the fiat of the law. the subjects it had specially and absolutely applied. The privilege of appraisement and suspension was in itself a great indulgence; it would become an opprobrium to justice, if it could be converted into a means of abrogating rights which she had expressly and deliberately conferred. The appraisement and suspension wrought no change in the relative position of the parties, it neither released nor weakened the hold taken by the law on the subject, but only completed the proceedings on the conditions which the statute had prescribed, the operation it had begun, and which it had the regular authority to fulfill. We regard the venditioni exponas in this case merely as a continuation and completion of the previous execution by which the property had been appropriated, and was still in the custody of the law and not as a separate, independent, much less an original proceeding, the offspring or result of a distinct and farther adjudication. This interpretation is in conformity with the meaning and purpose of the process of venditioni exponas."

While in the cited case a new execution or fieri facias might not have been allowed as more liberally indulged by statute providing for "other executions," nevertheless

the judgment creditor was entitled to a sale of the property under the writ of venditioni exponas for the reason that a levy had already been made upon the property.

Thus it is clear under the common law that while the death of the judgment debtor prevented the issuance of fieri facias (until the judgment was revived by scire facias), the death did not prevent the issuance of a writ of venditioni exponas for the sale of the property held under previous levy.

Relators seek to do under the statute exactly what they had a right to do under the common law. This property was levied upon under execution of January 29, 1930, and during the lifetime of the judgment debtor. Litigation ensued, but was finally concluded favorably to relators. The question is, Does the statute afford and preserve the remedy?

The Kansas court, in Rain v. Young, 61 Kan. 428, 78 Am. St. Rep. 325, 59 P. 1068, held under such circumstances that a new execution might issue after the death of the judgment debtor for the sale of property levied upon prior to his death. This holding was under the view that "the last execution under which the sale was made related, in its operation, back to the levy under the prior one" and "no new appraisement was necessary." The syllabus stated the rule:

"An execution was levied upon land which was appraised and advertised for sale by the sheriff. Further proceedings under the writ were enjoined by the judgment debtor, and return of the process made by the officer, reciting the facts. The defendant in the execution then died, and the injunction suit was dismissed. Immediately and without revivor, an alias execution was issued, reciting the steps taken under the first one, and the land advertised and sold thereunder. Held, that the alias execution, under the statute, performed the office of a venditioni exponas at common law, and that sale made under it was valid."

In the case of Ritchie v. Higginbotham, 26 Kan. 645, where an execution was levied and returned and an alias was issued in the usual form, making no reference to the prior execution, it was held that while the alias writ was not in the form of a vendi, it performed the same office and a legal sale cou'd be made under it, and no distinct and direct command need be contained in the writ to sell the property previously levied upon.

Counsel for respondent seek to dis-

tinguish the case of Rain v. Young, supra, under the reasoning that Kansas does not have a statute like section 1246, supra, providing no execution shall issue after the death of the judgment creditor, with certain exceptions, and by reason of decisions from Dakota and California hereinafter considered. But, as we view it, the distinction is without merit. The statute merely states the common-law rule, and the court in Kansas finds authority under a provision such as contained in section 461, supra, to treat an alias execution as a writ of venditioni exponas as at common law. Neither is the exception provided by our statute (1246, supra) and quoted in paragraph 3 of the syllabus herein relied upon in the decisions cited.

Respondent relies upon the case of Yankton Savings Bank v. Gutterson (S. D.) 90 N. W. 144, wherein the conclusion was that:

"On the death of the defendant either before or subsequent to the attachment, but before the judgment was satisfied, the attachment lien was dissolved, and the property levied upon under the attachment belongs to the administrator to be administered upon in due course of administration."

Special emphasis is sought to be laid upon this decision, for it is said our probate procedure was derived from Dakota. This case arose upon an attachment proceeding, and the rule in attachment cases is sometimes different. See 6 C. J. 279, sec. 534 (b).

In Mosley v. So. Mfg. Co., 4 Okla. 496, 46 P. 508 our Territorial Court held contrary to the rule in the cited case regarding an attachment. Our view was in accord with the general rule that an attachment was not dissolved by the death of the judgment debtor.

In Dakota there was "no warrant in the statute for a special execution upon an ordinary money judgment, even though the property of the judgment debtor had been attached and is held as security for the debt." Therefore, as at common law, the judgment creditor preforce resorted to a general execution on the judgment. Fieri facias was prohibited by the common law unless tested before the death of the judgment debtor. In Dakota, upon the death of the judgment debtor, general execution, with certain exceptions, was prohibited by statute. In Oklahoma, by reason of section 388 C. O. S. 1921, in attachment proceedings, if judgment be for plaintiff, it is satisfied by sale of attached property by order of court "as

if the same had been levied on by execution," and general execution is not required unless there remains a balance due on the judgment, in which event "execution may issue thereon for the residue, in all respects as in other cases." The fifth paragraph of the syllabus in the cited case indicated that the Dakota statutes were amended to conform to practice such as ours whereby special execution is authorized against attached property.

The case of Mitchell v. De St. Maxent, 71 U. S. 237, 18 L. Ed. 326, discloses the variance. There it was said:

"The writ of fieri facias, on which Mitchell rests his title, was tested after the death of St. Maxent, and, according to a familiar rule of the common law, it was therefore void. The death of a defendant before the test of an execution compels the plaintiff to sue out a writ of scire facias, for the 'alteration of the person altereth the process'."

The case of Taylor v. Doe, supra, was distinguished in these words:

"But it is contended that the doctrine of that case was overturned by the decision of Taylor v. Doe, 13 How. 288. This is an erroneous view of that decision. The court held in that case that it was not necessary to revive a judgment by scire facias, where an execution regularly issued during the life of the defendant had been levied on land, but that the officer who made the levy could proceed to sell under a venditioni exponas. That writ was regarded as a completion of the previous execution, by which the property had been appropriated, and not as an original or independent proceeding."

It was held in the case that the execution to sell property "* * * is to be tested and issued as writs of fieri facias or on judgments obtained through the usual methods of the common law." So being regarded, it was a new process, and not a "vendi" which may be permitted after death of the judgment debtor as the mere complement of fieri facias.

Moreover, the statute of Kansas, like that of Oklahoma, section 461, supra, authorizes "other executions" for the purpose of sale of property previously levied upon under execution. There was no such statute, at least as to attachment proceedings, in South Dakota which governed the Yankton Bank Case.

While section 1246, supra, was adopted from Dakota, and in view of the construction placed upon it, nevertheless it is

neither decisive nor persuasive of the issue at bar. The Dakota construction of this statute was not decisive of the cited case, but the decisive issue seems to have been whether the attachment abated upon the death of the attachment debtor—contrary to the majority rule and the rule followed in the decision of the Oklahoma Territorial Court, it was held that the attachment did so abate. If the attachment abated, and if no special order of sale was authorized by attachment, but a general execution was necessary and death of the attachment debtor intervened, a general execution could not issue as a new and independent process, for it was prohibited by statute.

The decision from California relied upon, Meyers v. Nott, 29 Cal. 359, is likewise an attachment case, and so distinguished.

It is urged that relators, by filing claim in the probate proceedings pending in the county court of Carter county made election of remedies and abandoned the right to proceed by execution. This is also untenable. The decision in Kimble Motor Co. v. Androw (Wash.) 215 P. 340, is not persuasive in the cause before us.

The rule stated in the cited case, that filing claims against an estate of deceased purchaser of an automobile under a conditional sales contract constitutes a waiver of right to retake the property, has nothing to do with the right of a judgment creditor to present the claim represented by his judgment to an administrator.

The rule as to so-called conditional sales contracts exists whether the vendor elects to collect from the purchaser or his estate. The principle is that he cannot elect "to make such conditional sale absolute and at the same time maintain an action to retake the property." Galbreath v. Mayo, 70 Okla. 252, 174 P. 517; 55 C. J. 1270. Whereas, under the latter right, the filing of a claim with administrator is necessary where a deficiency is sought as a general claim against the estate. Fluke v. Douglas. 158 Okla. 300, 13 P. (2d) 210. And there is no waiver or abandonment of a lien secured on the property of a judgment debtor in his lifetime, by the presentation of a claim to the administrator of the judgment debtor's estate. Morton v. Adams (Cal.) 56 P. 1038; 24 C. J. 334; Crooker v. Pearson (Kan.) 21 P. 270; 11 R. C. L. 207; Johnson v. Nat. Bank, 320 Ill. 389, 151 N. E. 231, 44 A. L. R. 1306.

In the case at bar, when the claim was filed, cause 21929 was pending on appeal, and had relators failed to file their claim for their judgment with the administrator, and had the cause on appeal been reversed, they would have been entirely without remedy. The contention is without merit, and it follows that the proceeds of the property levied upon are not required to be applied to the payment of the five different classes of preferred claims arising under section 1255, O. S. 1931, in the probate proceedings rather than to satisfaction of the judgment under execution as contemplated by the rules of law hereinbefore set forth. On the other hand, lien rights of judgment creditors and mortgagees are similarly situated under the 6th classification of section 1255, O. S. 1931, as to order of payment from assets of an estate in prboate, but such classification does not prevent prior recourse to specific property bound as security for the lien debt. Dawkins v. People's Bank & Trust Co., 117 Okla. 181, 245 P. 594; Wichita Mill & Elevator Co. v. Farmers' State Bank, 102 Okla. 83, 226 P. 870; Secrest v. Wood, 98 Okla. 60, 224 P. 349; Costal Sales Corp. v. Hood, 147 Okla. 66, 295 P. 391; Western Newspaper Union v. Thurmond, 27 Okla. 261, 111 P. 204; Golden Gate, etc., Co. v. Taylor (Cal.) 52 L. R. A. (N. S.) 1152; In re Stevenson's Estate (Mont.) 289 P. 566.

Therefore, concluding that it is relator's right to subject the property upon which levy has been made to execution and sale and that other and further executions may be properly issued for such purpose, and that mandamus is the proper remedy to enforce this right, it is ordered that the writ as prayed issue.

OSBORN, V. C. J., and WELCH, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and BAYLESS and BUSBY, JJ., absent.