124 22
e138 259
e138 261
e138 306
138 307

[S. F. No. 1499.   Department Two.—April 11, 1899.]

CORA A. MORTON, Appellant, v. W. J. ADAMS et al., Respondents.

JUDGMENT LIEN—DEATH OF JUDGMENT DEBTOR.—The lien of a judgment docketed against the judgment debtor during his lifetime is not released or affected by his death pending the time limited by the statute for the continuance of such lien.

ID.—PRESENTATION OF JUDGMENT—CONTINUANCE OF LIEN—MERGER.—The fact that the judgment is required to be presented as a claim against the estate of the judgment debtor, and to be paid in the due course of administration, and is not enforceable by execution, is not inconsistent with the continuance of the lien, which is ranked with the recognized lien of a mortgage; and the presentation and allowance of the judgment as a claim does not destroy or merge the judgment lien.

ID.—ALLOWANCE OF CLAIM NOT A JUDGMENT—MERGER OF JUDGMENTS.—The allowance of a claim is not, in any true sense, a judgment; and none of the grounds upon which one judgment has been held to be merged in another, apply to the case of the allowance of a judgment as a claim against an estate.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

J. C. Bates, for Appellant.

Van Ness & Rodman, for Respondents.

PRINGLE, C.—Suit to quiet title.   Plaintiff is owner of the land.   Defendant, London and Lancashire Insurance Company, claims a lien by judgment upon it.   The following are the facts: The said defendant recovered a judgment against Emeline Wallace on March 13, 1896.   She was then the owner of the land; and the judgment was duly docketed, and became a lien upon it. Emeline Wallace conveyed the land to plaintiff, subject to the lien of the judgment, and died on May 26, 1896.   Administration was taken out, and the judgment was presented as a claim against her estate, and the claim allowed on September 24, 1896, The defendant in its answer sets up the lien of the judgment, and in a cross-complaint prays a foreclosure of the lien.   The court finds that the lien is a valid and existing lien upon the

property, but grants no other relief to the defendant. Thus, no question of procedure is involved, only the existence of the lien. The plaintiff appeals, and contends: 1. That the judgment ceased to be a lien on the death of Emeline Wallace, the judgment debtor; 2. That the presentation of the claim against her estate destroyed the lien, if any existed.

1. Is the lien released by the death of the judgment debtor? The burden is on the appellant to overcome the express provision of the Code of Civil Procedure, section 671: "The lien continues for five years unless the enforcement of the judgment be stayed on appeal by the execution of a sufficient undertaking as provided in this code, in which case the lien of the judgment and any lien by virtue of an attachment that has been issued and levied in the action ceases." But other sections of the code confirm rather than negative the continuance of the lien after the death of the debtor. Section 669 of the Code of Civil Procedure, in making provision for the entry of a judgment, says: "If a party die after a verdict or decision upon any issue of fact, and before judgment, the court may, nevertheless, render judgment thereon. Such judgment is not a lien upon the real property of the deceased party, but is payable in the course of administration on his estate." And in the title devoted to estates of deceased persons the same provision is re-enacted. (Code Civ. Proc., sec. 1506.) It is impossible to resist the effect of this express provision as implying that the judgment in other cases is a lien. If every judgment ceased to be a lien upon the death of a debtor, why make special provision that this judgment, rendered upon a decision made before the death, should not be a lien?

There is also an apparent recognition of the continuing lien of judgments in section 1643 of the Code of Civil Procedure. In that section, in making provision for the payment of debts, there is given to "judgments rendered against the decedent in his lifetime" the same preference against the general assets which is given to mortgages against the particular property covered by the lien of the mortgage. The payment of judgments "in the order of their dates" is the enforcement of their liens. And, what is more persuasive still, to the same end is the following provision of section 1505: "A judgment creditor, having a

judgment which was rendered against the testator or intestate in his lifetime, may redeem any real estate of the decedent from any sale under foreclosure or execution in like manner and with like effect as if the judgment debtor were still living." This provision, read in connection with the definition of a redemptioner (Code Civ. Proc., sec. 701, subd. 2), is a recognition of the existence of the posthumous judgment lien. It might be argued that such a provision is unnecessary if the continuance of the judgment lien were an admitted and recognized fact. But the provision is a part of the section which provides that no execution shall issue upon the ordinary money judgment, but that the judgment must be presented as a claim against the estate; and then, as if to give assurance that the judgment loses no other attribute, comes this provision that the right to make redemption (to which the existence of a lien is essential) remains unimpaired. The concurrent provisions of the general practice and of the probate procedure seem to leave no doubt of the intention of the code not to extinguish the lien upon the death of the debtor. The only apparent uncertainty arises from the fact that the judgment is required to be paid by the executor or administrator in the course of administration, and is not enforceable by execution. But this provision is not inconsistent with the continuance of the lien; and within the provision itself lies, as we have seen, a *quasi* recognition of the lien in ranking it with the recognized lien of the mortgage. To look at the consequences of any other conclusion than the above is to find additional confirmation for that conclusion. If the judgment debtor could transfer his property and then die, leaving to his creditor the barren remedy of a claim against a depleted estate, judgment liens, which have been so much favored by the enactment of 1895, would lose nearly all their value. A judgment lien has always been regarded as the highest form of security to a creditor. But if its vitality is to depend upon the life of the debtor, whose death could thus be turned to profit, the judgment security must be remodeled.

As an argument against the existence of a lien, the appellant invokes the alleged absence of any provision of its enforcement, insisting that it is not embraced within the intent of section 1500. The construction of that section is not involved in this

appeal, nor is the method of enforcement. But the continuance of the lien is too clearly within the intent of the other sections reviewed to be affected, in any aspect of this question, by this negative argument of the appellant.

2. Do the presentation and allowance of the judgment as a claim against the estate destroy its lien? This question is substantially answered by the above, especially by the strong implication of section 1506. Every judgment must be presented as a claim. If the presentation and allowance destroy the lien of the judgment, why does section 1506 make provision that judgments rendered after the death shall not be liens? The necessity of presentation applies to judgments rendered before as well as after the death. If the presentation is to destroy all liens, why say industriously in either case that there is no lien?

The learned counsel for the appellant contends that the judgment is merged in the allowance of the claim, and therefore its lien destroyed. He cites the familiar cases which have held that for some purposes, such as bearing interest, the allowance of a claim is equivalent to a judgment, and from that contends that one judgment is merged in the other. The argument is not technically correct. For the allowance of a claim is not in any true sense a judgment. The first case cited by appellant is *Estate of Glenn*, 74 Cal. 568. That case refers to and cites "numerous decisions which hold that for some purposes the allowance of a claim is a judgment"; admits that "the allowance is not conclusive upon the heirs," and cites *Magraw v. McGlynn*, 26 Cal. 420, to the effect that "claims so allowed and approved pass into judgments of a qualified character only." In the next case cited by appellant—*Walkerley v. Bacon*, 85 Cal. 140—a claim was allowed for only half of the amount for which it was presented. The court below held that the acceptance by the plaintiff of the partial allowance of the claim prevented his recovery of the balance. This might have given countenance to appellant's theory that the allowance had the effect of a judgment in which the claim was merged. But on appeal the ruling of the court was reversed. In no sound or reasonable sense could it be held that, under our probate procedure, there is such a merger of the judgment in the allowed

claim as would destroy the lien of the judgment. That would make the creditor's security retrograde, rather than advance, by the merger. The essential idea of the merger is a benefit to the creditor, to give him a stronger and better position. The usual examples of merger are the absorption of a lesser estate in a larger one, and, as applied to demands, the absorption of the lower security in the higher—a promissory note, for instance, in a judgment. This original idea of the merger was at first rigidly adhered to; and many courts refused to recognize the merger between securities of equal degree. On that account one judgment was held not to be merged in another judgment based upon it. But many later cases have held that where one judgment is the cause of action on which another judgment is based, the first judgment is merged in the second, upon the ground that it would harass the defendant unnecessarily to allow two judgments to stand against him with the same remedies —that is, as has been said, would be to injure the defendant without benefit to the plaintiff. It has been held, however, that this merger would not be allowed to have the effect of extinguishing the lien of the first judgment when it is necessary to preserve priorities. (*Hay v. Alexandria etc. Ry. Co.*, 20 Fed. Rep. 15.) It is plain that none of the grounds upon which one judgment has been held to be merged in another apply to the case of the allowance of a claim under our probate procedure. A case in very close analogy to the present one is *Hardin v. Melton*, 28 S. C. 38. In that case, Mrs. Wright, a judgment creditor, had presented her judgment to the administrator of the estate of the debtor upon a call made by him for the creditors to establish their demands. Other junior judgments, sufficient with the judgment of Mrs. Wright to exhaust the assets of the estate, were presented to the administrator. After this presentation Mrs. Wright caused execution to be levied upon property which had been owned by the judgment debtor at the time of the entry of the judgment, but which, as in this case, had been afterward sold by him subject to the lien of the judgment. The court says: "The respondent contends, secondly, that if the judgment ever had lien it was lost when it was established against the estate of the deceased debtor under the call for creditors by the doctrine of merger. It may be true

that when a judgment creditor comes in under such a call, that his lien on the assets being administered, the proceeds of property over which he may have a lien or otherwise may be regarded as abandoned, but he is compensated by being entitled to be paid according to the date of his judgment, and, therefore, is no way injured. But to say that his lien over all of the property of the debtor, real and personal, whether the subject of administration or not, is also lost, is a startling proposition, and one which we think is without support in the decided cases." An injunction at the suit of the purchaser to restrain the sale by Mrs. Wright under her judgment was dissolved.

The circumstances of the present case are the *reductio ad absurdum* of the appellant's argument of her contention that the presentation of a judgment to the estate of the judgment debtor, who has conveyed the property in his lifetime, and whose estate is not shown to have any other asset, destroys, under the guise of the equitable doctrine of merger, the only security which the creditor had for his debt.

I advise that the judgment be affirmed.

Britt, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.        Henshaw, J., Temple, J., McFarland, J.

Hearing in Bank denied.