[Civ. No. 240.    Third Appellate District.—December 31, 1906.]

LOUISA J. THOMPSON et al., Respondents, v. THE BANK OF CALIFORNIA, Respondent; A. N. DROWN, Administrator, etc., of WILLIAM N. THOMPSON, Deceased, Intervener, Respondent; and TERESA BELL, Administratrix, etc., of THOMAS BELL, Deceased, Appellant.

PROMISSORY NOTE—RESULTING TRUST—PAYMENT OF PART CONSIDERATION—ADMISSION OF TRUST.—The principles of equity to which resulting trusts in real estate are subject are equally applicable to personal property; and where a promissory note was taken in the name of one payee, and another person furnished part of the

consideration, and that fact was admitted by the nominal payee, a resulting trust arose in favor of such other person, and the payee became trustee for him to the extent of that consideration, and to his share of the interest upon the note.

ID.—ENFORCEMENT OF TRUST—POSSESSION OF TRUST PROPERTY WITH NOTICE.—The court will enforce the trust against the trustee, or his administrator, and all other persons who come into possession of the note, or its proceeds, with notice of the trust, in the same manner and to the same effect as against the original trustee.

ID.—PLEDGE OF NOTE TO BANK—COLLECTION—TIME OF NOTICE OF TRUST—LIABILITY OF BANK.—Where the nominal payee pledged the note to a bank, he did not thereby devest the beneficiary of his interest therein, and it is sufficient that the bank which stood in the position of a mere debtor as to the surplus proceeds of the note which it collected had notice of the trust and of the interest of the beneficiary therein, before the surplus proceeds were paid over, which notice is sufficient to charge the bank with liability to the beneficiary, as against the administratrix of the deceased pledgor.

ID.—NOTICE AT TIME OF PLEDGE IMMATERIAL.—The question whether the bank had or had not notice of the right of the beneficiary at the time of the pledge does not concern the administratrix of the deceased pledgor, who stands merely in his shoes, and he would not have been heard to dispute his beneficiary's interest in the pledged note, simply because at the time of pledging it he failed to notify the bank of that fact, when the bank has not been injured by such failure, in paying over the surplus proceeds without notice of the beneficiary's rights.

ID.—ALLOWANCE FROM PART PROCEEDS—ESTATE OF BENEFICIARY NOT REQUIRED TO LOOK TO ESTATE OF MAKER.—Conceding that the full amount of the note was not collected by the bank, and that a suffi- cient sum was left unpaid to pay the sum due to the estate of the deceased beneficiary with interest in full, yet where enough was collected to pay the principal sum due to each party and part of the interest, the estate of the beneficiary is entitled to be paid the principal sum due to it out of the proceeds, besides its pro- portionate share of the interest collected, and cannot be required to turn over to the estate of the deceased payee the whole sum col- lected by the bank, and to look only to the estate of the de- ceased maker of the note for its full share and interest.

ID.—ALLOWANCE OF CONTINGENT CLAIM AGAINST ESTATE OF PAYEE— ESTOPPEL—CLAIM AGAINST BANK.—The presentation and allow- ance of a contingent claim of the estate of the deceased bene- ficiary against the estate of the deceased payee of the note can- not be regarded as a judgment on which payment can be ordered, and cannot estop the estate of the beneficiary from enforcing pro-

portionate payment from the bank out of the proceeds of the note in its hands.

ID.—REFUSAL OF AMENDMENT TO ANSWER—DISCRETION.—Where the administratrix of the deceased payee requested an amendment to her answer to the complaint in intervention of the administrator of the deceased beneficiary, which she could not demand as of right, the discretion of the court in refusing it will not be interfered with where no abuse of discretion appears.

ID.—INSUFFICIENT DEFENSES.—Neither the pleading of the contingent claim presented by the administrator of the deceased beneficiary, nor the presentation and allowance of another larger claim against the estate of the deceased payee, not alleged to have included the claim enforced against the bank, constitutes any defense to the enforcement of such claim.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

T. Z. Blakeman, for Appellant.

James M. Allen, for Respondent Bank.

Drown, Leicester & Drown, for Intervener, Respondent.

CHIPMAN, P. J.—Plaintiffs are heirs at law of William N. Thompson, deceased. Intervener A. N. Drown is administrator with the will annexed of the estate of said Thompson deceased. Teresa Bell was ,joined as a defendant in the ac-George Staacke, formerly executor of the will of said Bell, deceased, but was later substituted as administratrix with the will annexed of said Bell, and the action as to defendant George ,Staacke, formerly executor of the will of said Bell, was dismissed. Objection was made by defendant Teresa Bell to plaintiffs prosecuting the action on the ground that Drown had been appointed administrator of the estate of Thompson, deceased, and had filed his complaint in intervention setting up the same cause of action as that of plaintiffs. The cause was tried upon the issues presented by the complaint of intervener Drown and the answer thereto by defend-

ant Teresa Bell as administratrix. The defendant bank denied the averments of the complaint in intervention except as to the demand alleged to have been made upon it by the intervener.

The cause was tried by the court without a jury and the intervener had judgment against defendant bank, from which defendant Teresa Bell, administratrix, alone appeals and comes here on a bill of exceptions.

The complaint of intervener and the answer of Teresa Bell present the issues in the case. These pleadings are somewhat voluminous, but the facts essential to a clear understanding of the issues may be considerably abbreviated.

The complaint sets forth: That on November 19, 1891, one L. L. Robinson, being indebted to said Thomas Bell in the sum of $28,262.18 and to said Wm. N. Thompson in the further sum of $1,000, executed on said date to Bell, acting for himself and also as the agent and trustee of Thompson, his promissory note for the sum of $29,262.18, the aggregate of the two above sums, said note to bear five per cent interest. Facts are fully set forth showing a fiduciary relation to have existed on the part of Bell toward Thompson prior to November 19, 1891, and subsequently and up to the day of Bell's death, and that Bell was the financial agent of Thompson in California and managed the latter's property, and was charged with the collection of said $1,000 by Thompson, and that it was pursuant to said fiduciary relation that Bell took the said Robinson note in his own name, but that although the said note was in his own name, it was held by Bell as owned in common according to their said respective interests therein; that prior to Bell's death he became indebted to defendant bank, and to secure his said indebtedness he pledged the said note to defendant bank without the knowledge or consent of Thompson, but with the knowledge of the defendant bank that said note was owned in common with Bell, and that Bell held Thompson's interest therein as the agent and trustee of Thompson; that Bell died October 16, 1892, and that the executors of his will were duly notified of Thompson's interest in said note, and after investigation acknowledged that he had such interest therein; that the said executors of the will of Bell resigned or were removed, and

defendant Teresa Bell became administratrix of his estate; that Thompson died October 15, 1897, and intervener was duly appointed administrator of his estate with will annexed; that about November 5, 1900, and before ,said note or the indebtedness evidenced thereby, or any part thereof, had been paid to defendant bank, plaintiffs in the action notified it of the aforesaid facts as to Thompson's interest in said note, and that prior to the filing of the complaint in intervention, intervener made demand upon defendant bank for the said sum of $1,000 and interest thereon, but said defendant refused payment thereof; that about the eighth day of December, 1900, defendant bank collected the aforesaid promissory note so held by it as security, to wit, the whole of the principal and a portion of the interest, said amount so collected exceeding by more than $1,500 the amount for which said promissory note was held as security, which said surplus now remains in the hands of said bank and belongs to the estate of said Thompson, deceased, to the extent of said $1,000 and interest thereupon; that the said Teresa, as ,administratrix, repudiates the claim of intervener thereto, and claims that the whole of said surplus should be paid to her for the benefit of the said estate of Bell, deceased; that intervener is unable to state the amount of interest paid on said note, but that he is entitled to receive a proportionate share thereof; that the estate of Bell is insolvent, as is also the said Teresa, and that, if said surplus were turned over to her, intervener would be unable to recover the said sum of $1,000 or the interest thereon or any part thereof.

Intervener prays for judgment for the sum of $1,000 and interest collected or received thereon by defendant bank; that defendant bank be required to account to intervener for all moneys collected or received by it on said promissory note, and that he recover his proportion or share of said moneys; that the court adjudge the rights of all parties in and to the said promissory note and the indebtedness evidenced thereby. Prayer also for general relief.

The answer to the complaint in intervention denies most of its averments. As separate defenses it avers: that whatever money Bell owed Thompson at the death of the former was loaned to him by Thompson and the indebtedness was for

money had and received. As a further and separate defense it is alleged that said Thompson, as a creditor of the Bell estate, presented for allowance to the executors thereof ''a certain contingent claim for the sum of $1,000, contingent upon the payment to the estate of the said Thomas Bell of the said note of L. L. Robinson described in the complaint of intervention for the sum of $29,262.18,'' which said contingent claim was allowed by said executors and approved by the court. For a further defense it is alleged that after the death of Bell, to wit, on February 13, 1893, Thompson presented to said executors his claim, as creditor of said estate of Bell, deceased, wherein he stated that there was on October 16, 1892, a balance on account due and owing to him in the sum of $3,561.63; that the said executors paid the said claim in the month of May, 1893, without any order of the court; that there are other claims against said estate which have never been paid; that the estate is unsettled and the assets thereof are insufficient to pay other claimants ''as much on their respective claims as the said Thompson has been paid on his claim as aforesaid.''

It is not alleged that the said claim for $3,561.63 included the amount now claimed or any part of it. Further answering, defendant Teresa pleads this latter sum as a counterclaim.

The court made findings substantially as alleged in the complaint in intervention; that defendant bank collected on the Robinson note on December 7, 1900, the sum of $30,847.18, and thereafter on September 3, 1901, it collected the further sum of $8,325.12, in all $39,172.30, of which $9910.12 was collected on account of interest; that the total amount received by defendant bank ''exceeded by more than $1,500 the amount of all indebtedness due or payable to it and secured by the said pledge of said note so made to it by said Thomas Bell''; that of the said sum of $29,262.18, the principal of said security note, $1,000 belongs to and is part of the estate of Thompson, deceased, and of the sum of $9,910.12 collected as interest, the sum of $338.55 belongs to said estate. Judgment passed for intervener for the sum of $1,338.55 against defendant bank, with costs of suit, and that plaintiffs take nothing by the action against defendants and intervener.

No errors of law in the admission or rejection of testimony are claimed in defendant's brief and there are no specifications of insufficiency of the evidence to support the findings, The inquiry is, therefore, confined to the sufficiency of the findings and to such questions of law as are properly raised by defendant.

1. It is contended that because the court failed to find that the Robinson note was pledged without the consent of Thompson, and failed to find that the bank had notice at the time of the pledge of Thompson's interest in the property pledged, the judgment has no sufficient support.

There was evidence, and the court found that before the bank had paid over any of the money collected on the Robinson note it had notice of Thompson's interest in it. To the extent of that interest the bank was under obligation to account to Thompson after it had been fully paid its loan to Bell. The fact that the bank had or had not notice does not concern Bell's administratrix, for she stands in no better position than did Bell in his lifetime, and he certainly would not have been heard to dispute Thompson's interest in the pledged note simply because in pledging it he failed to notify the bank of the fact. This want of notice was a fact of which the bank might have taken advantage had it, without notice, used the money to discharge Bell's indebtedness to it and had paid to him the surplus remaining. The evidence was that Bell in his lifetime acknowledged Thompson's interest in the note, and we fail to see how Bell could devest Thompson of that interest, as between themselves, by pledging the note to the bank.

The court made no specific finding that at the time of the pledge the bank had notice as to the alleged fiduciary relation subsisting between Bell and Thompson, and it is urged for this reason the bank cannot be charged with any trust. It is further contended that the judgment is based upon the theory of some contractual relation existing between the bank and intervener. The facts proven were that Thompson had a property interest in the Robinson note to the day of Thompson's death and that Thompson provided part of the consideration for the note which Bell acknowledged. That Bell became a trustee for Thompson to the extent of this prop-

erty interest the evidence clearly shows. Under familiar principles of equity jurisprudence a resulting trust arose in favor of Thompson, upon his furnishing the consideration for the Robinson note, to the extent of that consideration, for the principles of equity to which resulting trusts in real estate are subject are equally applicable to personal property. (1 Perry on Trusts, secs. 126, 130. See, also, 1 Beach on Trusts and Trustees, secs. 52, 177.)   And a court of equity will enforce a trust against all persons who, with notice of the trust, come into possession of the trust property, in the same manner and to the same effect as against the original trustee.   (*Lathrop* v. *Bampton,* 31 Cal. 17, [89 Am. Dec. 141], and cases cited in Notes on California Reports.   See, also, 1 Perry on Trusts, sec. 127; 2 Perry on Trusts, secs. 837, 838; *Sharpstein* v. *Friedlander,* 63 Cal. 78.   Also *Farmers' & Mechanics' Nat. Bank* v. *King,* 57 Pa. St. 202, [98 Am. Dec. 215], cited in the briefs, an instructive case which fully confirms the soundness of the above principles.) Among other things the court said: ''It is undeniable that equity will follow a fund through any number of transmutations and preserve it for the owner so long as it can be identified.   And it does not matter in whose name the legal right stands.   If money has been converted by a trustee or agent into a chose in action the legal right to it may have been changed, but equity regards the beneficial ownership. It is conceded, for the cases abundantly show it, that when the bank received deposits, it thereby became a debtor to the depositor.   The debt might have been paid in answer to his checks, and thus the liability have been extinguished in the absence of interference of his principals, to whom the money belonged.   But surely it cannot be maintained that when the principals asserted their right to the money before its repayment, and gave notice to the bank of their ownership, and of their unwillingness that the money should be paid to their agent, his right to reclaim it had not ceased. A bank can be in no better situation than any other debtor. If an agent receives money of his principal, and lends it, taking a promissory note to himself, the note belongs to the principal, and the borrower may not pay the agent after he has been informed that 'there is a superior right and has

received notice not to pay the agent." (Citing Story on Equity, sec. 1259.)

It is not necessary, to support the judgment, that it be found that at the time the bank received the note it was informed of the trust relation between Bell and Thompson. The bank had notice of Thompson's claim before it had disposed of the proceeds of the Robinson note, and that was sufficient to charge it with liability to Thompson.

2. It is contended that by computing interest on the Robinson note up to the date of the last collection, it would appear that there still remained uncollected over $6,000; that the findings do not show from whom the bank collected the two sums above stated on account of said note, whether from Robinson himself or from his estate or other source, or whether Robinson or his estate was insolvent. It is hence argued that "no principle of law or rule of equity would authorize the intervener as administrator of the estate of Thompson to take from the bank money which it had as the pledgee and agent of Bell collected as a part due upon the Robinson note." Appellant claims that the bank should turn over to the Bell estate the balance in its hands and Thompson's estate should look to Robinson or his estate for the balance due upon the Robinson note remaining uncollected, as it was more than sufficient to pay the $1,000 and interest claimed by Thompson. We cannot agree with appellant. Conceding that the bank did not collect the full face value and interest of the Robinson note, still Thompson was entitled to have his proportionate share of whatever was collected. The amount was sufficient to pay the principal due both Bell and Thompson and the interest collected was apportioned according to their respective interests.

The finding of the court is that the amount collected by the bank "consists of, and was and is made up of, the whole of said principal sum of $29,262.18 mentioned in said note, and the sum of $9,910.12 on account of the accrued interest," and this application of the money collected by the bank, as we understand the evidence, was in accordance with the express provisions of the note.

No reason occurs to us in support of appellant's contention that all the money collected should have been turned over

to the Bell estate and Thompson be compelled to look to Robinson or his estate. The bank was under the same obligation to account to Thompson, having notice of his rights, as Bell would have been had he collected the money. The complaint of appellant that intervener is availing himself of the services of the bank in collecting the amount due Thompson, has no merit. If these services had value, appellant had the benefit equally with Thompson's estate.

3. It is urged that the court erred in sustaining intervener's demurrer to the defenses set forth in paragraphs XIII and XIV of the answer of defendant Teresa Bell. These defenses have already been mentioned and related to the claims filed by Thompson with the executor of Bell's estate. As to the claim for $1,000, it was presented as contingent and its allowance was upon the happening of the contingency, to wit, that the payment of the Robinson note might be made to the Bell estate. It was not alleged that the payment had been made or would be made. On the contrary, it appeared, and the court found, that the money due on the claim had been collected by the defendant bank, in whose hands the money still was. Of what materiality was it that the claim was then pending or allowed in the Bell estate? This action was intended to and will finally determine every question arising out of the claim and the judgment will forever discharge the Bell estate from any liability thereon. It is true, that in a sense the approval and allowance of a claim against an estate is a judgment, but it was said in *Morton* v. *Adams,* 124 Cal. 229, [71 Am. St. Rep. 53, 56 Pac. 1038] : "The allowance of a claim is not in any true sense a judgment." In *Estate of Glenn,* 74 Cal. 567, [16 Pac. 396], cases were cited to show "that for some purposes the allowance of a claim is a judgment." The fact that the allowance and approval may be contested at subsequent stages of the proceedings in probate (*Estate of Lohse,* 62 Cal. 413) shows that the allowance is not a final judgment in the full sense of that term. In the present case, where the allowance was of a contingent claim, it could not in its very nature be regarded as a judgment upon which payment could be ordered, for the simple reason that until the happening of the contingency no liability of the estate of Bell could arise on the

claim as alleged. This action is primarily against the bank to recover money in its hands belonging to the estate of Thompson. The only reason existing for making the administratrix of Bell's estate a party was because she made some claim to the funds. Thompson did not by presenting his claim to the Bell estate part with his right to enforce it from the person primarily liable, as the bank had become by collecting the money, nor did he give to the representative of Bell the exclusive right to collect the money from the bank. Admittedly the Bell estate is unable to pay its creditors in full and to drive intervener to that estate for what is justly due the Thompson estate would be unjust to the latter and result in loss to it. Furthermore, Thompson had no assurance that his interest in the Robinson note would be acknowledged by Bell's representatives, and hence the prudential step taken by him in presenting the claim was but a natural one to determine their attitude toward the claim. Its allowance simply settled the matter as between them and him and gave him the assurance that if the money came into their hands his claim to it would be recognized. But we cannot bring ourselves to believe that he was thus barred of his right or estopped to enforce payment from the bank. We think the matter set up by way of special defense was immaterial and that the demurrer to it was properly sustained. We find nothing in *Holt Mfg. Co.* v. *Ewing,* 109 Cal. 353, [42 Pac. 435], inconsistent with the foregoing. The case of *Louis* v. *Triscony,* 58 Cal. 304, more nearly approaches the present case. There the survivor of two joint makers of a note was sued and he pleaded that the note had been presented to the administrator of the deceased maker and had been allowed as a claim against his estate. It was held that the facts pleaded did not constitute a defense.

4. Appellant moved to amend her answer at the trial and her motion was refused. The allowance of the proposed amendment was not such as could have been demanded as of right and was within the discretion of the court, with which we will not interfere unless abuse be shown. (1 Spelling's New Trial, sec. 107.)

There is nothing in the record, except the proposed amendment, from which we may judge of its materiality to the

defense or of the reason for not offering it before the trial commenced. The amendment was by way of pleading with greater particularity the contingent claim already commented upon, and if we are right in the conclusions already stated the proposed amendment offered no defense to the action and was immaterial.

5. Paragraph XIV of appellant's answer, to which the demurrer was sustained, set forth the presentation by Thompson and the allowance and payment to him of a claim already mentioned. There is no allegation that this $1,000 claim was included in it, and no presumption can arise that it was so included. It is alleged that the claim set out in paragraph XIV was paid in May, 1893, by the Bell executors, and yet appellant shows by her proposed amendment that the contingent claim for $1,000 was allowed and approved by these same executors in June, 1893. It is not probable that they would have taken this action if this same amount had been included in the other claim paid by them.

The judgment is affirmed.

McLaughlin, J., and Buckles, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 28, 1907.