BABER et al. v. GALBRAITH. (No. 7174.)

(Court of Civil Appeals of Texas. Galveston. April 28, 1916. Rehearing Denied May 18, 1916.)

1. APPEAL AND ERROR ⬅275—EXCEPTIONS TO PLEADING—WAIVER.

Where pleas of misjoinder, in the form of special exceptions, were not acted upon by the court, they will be regarded by the appellate court as having been waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1566, 1567, 1647; Dec. Dig. ⬅275.]

2. ABATEMENT AND REVIVAL ⬅84—PLEAS IN ABATEMENT—TIME FOR FILING.

Pleas of misjoinder, in abatement, set up for the first time in an amended answer filed by defendants after answering to the merits, came too late.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. § 176; Dec. Dig. ⬅84.]

3. DIVORCE ⬅322—PROPERTY NOT DIVIDED— RIGHTS OF WIFE—ELECTION.

Where a husband, after divorce, in which no partition of the community property was made and none attempted, sold land of the community, he held the proceeds one-half in trust for his wife, and she could sue in a court of common-law jurisdiction to recover her half of the money from the bank into which the buyers had paid it for the husband, though administration had been taken out on his estate and was still pending, and the claims of all creditors and debtors had not been finally adjusted,

as she had an election to recover the trust fund from the party in whose possession she found it.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 822–825; Dec. Dig. ⬅322.]

4. INTERPLEADER ⬅32—RECOVERY—TITLE.

Where a bank, claiming only to be a stakeholder of the fund, interpleaded the parties claiming to own it, each of said parties occupied the position of plaintiff in the claim for the fund, and became entitled to it only upon showing good title; it not being enough that the adversary party had no right of recovery.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. §§ 72, 73; Dec. Dig. ⬅32.]

5. INTERPLEADER ⬅26—SUIT BY LEGATEES AND HEIRS—PLEADING.

In suit by a divorced wife to recover from a bank half of sum of money which the buyers of community property from the husband paid in for him, the legatees and heirs of the husband, interpleaded by the bank, who failed to make the necessary allegations and proof to authorize them to maintain suit, that there was no administration upon his estate in Texas, and that there was no necessity for administration, could not recover nor complain of the judgment rendered.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. §§ 50, 53, 54; Dec. Dig. ⬅26.]

6. EXECUTORS AND ADMINISTRATORS ⬅524 (1)—STANDING TO CLAIM FUND.

In suit by a divorced wife to recover funds paid into bank for her husband in payment of community property sold by him, the executors named in such husband's will, one of whom qualified in another state, but neither of them in Texas, had no standing to claim the fund, since a foreign executor can neither sue nor be sued in the courts of Texas.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2330–2333; Dec. Dig. ⬅524(1).]

7. APPEAL AND ERROR ⬅984(5)—REVIEW— ALLOWANCE OF FEE—REASONABLENESS.

A fee of $500 allowed an attorney ad litem will not be held excessive, in view of the better position of the trial court to determine the sum that would fairly compensate the services.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3886; Dec. Dig. ⬅984(5).]

8. BANKS AND BANKING ⬅139—PAYMENT OF CHECKS—DOUBLE PAYMENT—PROTECTION OF BANK.

In suit by a divorced wife to recover of a bank funds paid it for her deceased husband for community property sold by him, where the check, given the husband by the bank, when the buyers of the land sued out injunction restraining payment thereof, had written across its face the words, "Payment stopped by injunction," the act of the court in refusing to require the husband's executors to surrender the check to the bank for cancellation was proper, since the bank was adequately protected against double payment by the writing on its face.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 406–409; Dec. Dig. ⬅139.]

Appeal from District Court, Harris County; John A. Read, Judge.

Suit by Bessie Campbell Galbraith against John F. Baber and another, executors, and others. From a judgment for plaintiff for a sum of money, and for Street & Graves, defendants, and their assigns, for the land in suit, etc., plaintiffs, the executors, and others appeal. Reformed and affirmed.

---

C. R. Wharton and S. H. Philbin, both of Houston, for appellants. Moody & Boyles and Ed. S. & L. C. Phelps, all of Houston, for appellee.

McMEANS, J. On June 27, 1895, J. E. Galbraith and Bessie Campbell were married in Galveston, Tex. Thereafter, on May 16, 1898, J. E. Galbraith bought from Sam Allen a tract of land in Harris county, and it thereupon became the community property of Galbraith and his said wife. In 1903 Galbraith and wife removed from Texas to New York, where they resided as husband and wife until 1909, when they were divorced, and thereafter both continued to reside in New York until 1913, when Galbraith died. After their divorce and in 1910, Galbraith sold the land to Street & Graves of Harris county, by general warranty deed, for $14,-172, one half of which was paid in cash, which he appropriated to his own use, and the other half for two promissory notes of the said Street & Graves in equal amount, payable in one and two years, respectively, from their dates, and bearing 8 per cent. per annum interest, the payment of which was secured by a vendor's lien on the land. These notes were by Galbraith paid into the Houston National Exchange Bank. Street & Graves paid to the bank the amount of said notes at their maturity, and, after the payment of the last maturing, Galbraith executed a release of the vendor's lien, which was duly delivered and recorded. The bank afterwards executed to Galbraith its cashier's check for the amount paid, which was held by Galbraith until he died, and it then passed into the hands of his executors, where it still remains. Galbraith left a will, in which he bequeathed all his estate to certain named persons, and in which he appointed John F. Baber, of New York City, and George B. Dobson, of Galveston, Tex., executors. The will was admitted to probate in the city of New York, and Baber duly qualified as executor, but Dobson never qualified as such. On June 25, 1913, the appellee, Bessie Campbell Galbraith, brought this suit against Street & Graves to recover an undivided one-half of the land, claiming the same by reason of her community interest therein. Street & Graves answered, pleading, among other defenses, that they were purchasers of the land for value without notice of Mrs. Galbraith's claim or title. They impleaded the bank, alleging that it still held the identical money paid by Street & Graves to it in satisfaction of said notes, and prayed for an injunction, restraining the bank from paying out the same during the pendency of the suit, so that they might be in a position to enforce the liability of their vendor, J. E. Galbraith, to them upon his general warranty, alleging that the money in the bank belonged to him. The injunction was granted. Thereafter the bank paid the money in question into the registry of the court, stat-

ing that it had issued a cashier's check covering the same; that it was a stakeholder only, and had no interest in it, and that the executors, legatees and heirs of J. E. Galbraith, were interested in the fund, and should be made parties. These parties were duly cited by publication, except Dobson, who was named in the will as the Texas executor, but who had never qualified, who answered separately from the rest. C. R. Wharton, Esq., was appointed by the court attorney ad litem for the executor, legatees, and heirs cited by publication, and filed an answer for them, pleading the statute of limitation of two years against Mrs. Galbraith's right of recovery of the fund in the bank, and asking that those represented by him be awarded the title and possession of money in question. He also asked that in the event the court should find that Mrs. Galbraith was entitled to the money, the estate of Galbraith recover one-half of the amount that had been expended by Galbraith out of his separate estate for the protection and benefit of the land, in the way of perfecting the title, etc., which should be debited against her recovery. There was no allegation in the answer of the attorney ad litem, or of either of the executors, that there was no administration on Galbraith's estate in Texas, and no necessity therefor. Other allegations in the answer will be referred to further on in this opinion. After the bank filed its answer, alleging that it still held the identical money paid by Street & Graves in satisfaction of said notes, Mrs. Galbraith amended her petition, setting up this fact, and alleged that the money, being the proceeds of the sale of her one-half of the land, belonged to her, and asked for judgment therefor against the bank. The case was tried before the court without a jury, and resulted in a judgment for Street & Graves and their assigns for the land, in favor of the bank, declaring that it was discharged of further responsibility by the payment of the money into court, and that it should recover $250 as attorney's fees, and in favor of Mrs. Galbraith for $7,117.42, less the costs of court, including allowances for attorney's fees, that John F. Baber and George B. Dobson executors of J. E. Galbraith, recover out of the fund so deposited in the registry of the court by the bank the sum of $818.90, to be paid to C. R. Wharton as attorney for the executors on account of the expenditures made by Galbraith for the benefit and protection of the land, and that the other parties to the suit should have no relief except that C. R. Wharton was allowed the sum of $500 for his services as attorney ad litem for the nonresident defendants. From this judgment Mrs. Galbraith and the executors, legatees, and heirs of Galbraith have appealed.

The court did not file conclusions of fact and law, and was not requested to do so. There was no motion for a new trial filed,

but the case is presented on assignments of error filed by the appellants in the court below and by cross-assignments filed by the appellee. The judgment in favor of Street & Graves for the land is not complained of by any of the parties.

[1, 2] Appellants' first assignment of error complains of the action of the court in overruling the defendants' plea of misjoinder of parties and of causes of action. The pleas of misjoinder were in the form of special exceptions. The record does not show that the pleas were ever called to the attention of the court, or that any ruling was sought or obtained thereon. It has been often held that an exception to a pleading not acted upon by the court will be regarded by the appellate court as having been waived. But even if the objection of misjoinder should be deemed to be a plea in abatement instead of a special exception, it came too late, for the reason that it is set up for the first time in an amended answer filed by defendants after answering to the merits.

[3] The second assignment complains that the court erred in awarding plaintiff judgment for the money sued for, for the reason that a court of common-law jurisdiction cannot decree that a creditor of the estate of a deceased person is entitled to be paid her claim by a debtor of said estate when administration has been taken out, and is still pending on said estate, and the claims of all creditors and debtors of said estate have not been finally adjusted. Under this assignment appellants advance the proposition that:

"A creditor or one holding a claim against the estate of a deceased person must enforce the debt or claim through an administration, and cannot do so by direct suit."

The vice in the position taken by the appellants is in the assumption that Mrs. Galbraith was a creditor of J. E. Galbraith's estate, and that as such creditor she was seeking to subject funds of the estate held by the bank to the payment of her debt, whereas it is her contention that such funds belonged to her and not to the estate, and that she was seeking to recover the funds as her own from the bank, which was holding the same as a stakeholder. The proof shows that the will of Galbraith was probated in New York, and that Baber had qualified as executor of his estate, and that the administration is still pending. An admission was made and entered by the parties at the trial, wherein it is stated that the money which was in the bank and which was paid by the bank into the registry of the court is the identical money which was paid to the bank by Street & Graves. That the land sold to Street & Graves was the community property of Galbraith and the plaintiff is not controverted by appellants in their brief, but was admitted in oral argument. No partition of their community property was made in the divorce proceedings in New York, and none attempted. The title to the land as conveyed by Allen, standing in the name of J. E. Galbraith, lodged the legal title to all of it in him, but he held the legal title to an undivided interest to a half thereof in trust for Mrs. Galbraith. Upon the conveyance by Galbraith, in whose name the record title stood, of the entire tract of land, including the plaintiff's undivided one-half interest therein, the title to which had theretofore been held by Galbraith for plaintiff's benefit, and therefore in trust for her, she became equitably entitled to receive the purchase money for her one-half of said land, and if said trust fund was attempted to be wrongfully diverted by him, she was not required by law to treat him as a debtor, but could elect as to whether she would do so, or whether she would pursue, identify, and recover the trust fund itself, either in its original form or in a substituted form, and, having discovered and identified the trust fund itself, she elected by this action to recover said trust fund from the party in whose possession she found it. In 39 Cyc. p. 528 et seq., it is said:

"It is well settled that a cestui que trust has the right in equity to follow and recover or impress the trust upon the trust fund or property which has been wrongfully diverted into whatsoever form or hands it may come, so long as it may be distinctly traced and identified, until it comes into the hands of a bona fide purchaser for value without notice, or the rights of innocent third parties have intervened, and until the means of ascertaining the property fails. The general proposition is maintained that if any property in its original state and form is impressed with a trust, no change of that state and form can divest it of such trust, or give the trustee converting it, or those who represent him in right, not being bona fide purchasers for value without notice, any more valid claim in respect to it than they had before such change, and it is immaterial whether the property with which the trust funds are mingled is money or whether it is bills, notes, securities, lands or other property. These rules apply to personal, as well as real, property in trust, and to trust property or funds mingled with property or funds of the trustee or to proceeds of the trust property in the hands of the trustee, or to trust property transferred to third persons. * * * It is well settled that in order that a trust fund or trust property which has been misapplied or wrongfully dissipated may be followed in equity, and the trust enforced as against the trustee or one who has acquired the property with knowledge of its character, it is necessary that it be clearly traced and identified either in its original or a substituted form. * * * According to the more modern authorities, however, the identity of a sum of money does not consist in the pieces of coin, but in the fund, and although the identical pieces of coin or kinds of money cannot be ascertained, yet if the money can be traced as a fund into a general mass of private and trust funds, it can be followed and impressed as a trust on the mixed fund, such as a deposit in bank to the trustee's individual credit; and this doctrine is further aided by the presumption that, where a trustee withdraws funds from a mixed fund, consisting of private and trust funds, he will be presumed to have withdrawn his own funds. In an action to follow trust property and to enforce the trust thereon, the burden of proof in the first instance, is on the cestui que trust to trace and identify his property, either in its original or substituted form; but when he has shown

that property of the trust is represented in the property sought to be impressed with the trust, the burden is then on the trustee or purchaser with notice to show what his interest is. Where the trust fund or property has been wrongfully diverted, the cestui que trust may elect either to pursue and recover the property in its original or converted form, on the terms of the original trust, so long as it is traceable, or to pursue some other proper remedy. Where a trustee diverts or misappropriates the trust funds or property, the cestui que trust may elect to treat him either as a debtor or as a trespasser. * * * Where a trustee in violation of his trust invests the trust funds or property in other property, into which it can be distinctly traced, the cestui que trust may either follow the same into its original or substituted form and claim it as held on the original trust, or he may hold the trustee personally liable for his breach of trust."

On page 558 the following is said concerning bank deposits:

"The doctrine that so long as trust property can be followed the property into which it has been converted remains subject to the trust applies to money specially deposited in a bank and to the debt thereby created, and as long as such money can be traced and identified, either in its original or substituted form, it may be followed and the trust enforced as against the bank which takes it with notice of its trust character, or as against a transferee with such notice, from the bank."

In the footnote on the same page, supported by a large number of authorities, is the following statement of the rule:

"Although the relation between a bank and its depositor is that merely of debtor and creditor, yet the fund does not change its character from the fact that the money has been deposited in the bank to the credit of the depositor, and if the money in his hands was impressed with a trust in favor of another, the deposit will remain subject to the same trust."

In the case of National Bank v. Insurance Co., 104 U. S. 66, 26 L. Ed. 693, which was a suit brought by the insurance company against bank to recover money which had been deposited in the bank by the agent of the insurance company in his own name, the Supreme Court of the United States said:

"But although the relation between the bank and its depositor is that merely of debtor and creditor, and the balance due on the account is only a debt, yet the question is always open, To whom in equity does it beneficially belong? If the money deposited belonged to a third person, and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account."

In the same case the court quotes with approval from Farmers' & Mechanics' National Bank v. King, 57 Pa. 202, 98 Am. Dec. 215, as follows:

"It is undeniable that equity will follow a fund through any number of transmutations, and preserve it for the owner so long as it can be identified. And it does not matter in whose name the legal right stands. If money has been converted by a trustee or agent into a chose in action, the legal right to it may have been changed, but equity regards the beneficial ownership. It is conceded, for the cases abundantly show it, that when the bank received the deposits, it thereby became a debtor to the depositor. The debt might have been paid in answer to his checks, and thus the liability extinguished, in the absence of interference by his principals, to whom the money belonged. But surely it cannot be maintained that when the principals asserted their right to the money before its repayment, and gave notice to the bank of their ownership, and of their unwillingness that the money should be paid to the agent, his right to reclaim it had not ceased. A bank can be in no better situation than any other debtor."

The court also quotes with approval from the case of Van Alen v. Am. Nat. Bank, 52 N. Y. 1, in which case it was decided that when an agent deposits in a bank to his own account the proceeds of property sold by him for his principal under instructions thus to keep it, a trust is impressed upon the deposit in favor of the principal, and his right thereto is not affected by the fact that the agent at the same time deposits other moneys belonging to himself, nor is it affected by the fact that the agent, instead of depositing the identical moneys received by him on account of his principal, substitutes other moneys therefor. The quotation from the opinion is as follows:

"It was suggested on the argument that notice to the bank by the depositor was necessary to protect the rights of the plaintiff; but this is not so. The title of the plaintiff does not depend upon whether the bank knew he had a title or not. That rested upon other facts. A notice to the bank might have prevented any transfer or the creation of a lien by the depositor, or prevented the bank from taking or acquiring such lien in good faith, but could not otherwise be necessary or important."

In the case of Third Nat. Bank of St. Paul v. Stillwater Gas Co., 36 Minn. 75, 30 N. W. 440, which was a suit by the gas company to recover from the bank money belonging to it which had been deposited in said bank by a third person, the Supreme Court of Minnesota said:

"So long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust. The product or substitute has the nature of the original imparted to it. The depositing of trust money in a bank, although it creates the relation of debtor and creditor between the bank and the depositor, does not change its character, or relieve the deposit from the trust. It is not the identity of the form, but the substantial identity of the fund itself, which is the important thing."

See, also, Thompson v. Bank, 4 Cal. App. 666, 88 Pac. 987.

As the one-half of the proceeds of the sale had never been paid to Galbraith, but was held by the bank, and as Mrs. Galbraith's suit was against the bank for its recovery, Galbraith never became her debtor for the amount of her interest, and therefore she did not, after his death, become a creditor of his estate. In this view it was not necessary for her to enforce her claim for the money through the administration pending in New York. The assignment is overruled, as is also the third assignment, which is also based upon the assumption that Mrs. Galbraith is a creditor of J. E. Galbraith's estate.

Under the fourth assignment, which sufficiently raises the points, appellants urge: (1) "That a creditor does not garnish property of his debtor by a direct suit against one indebted to his debtor;" and (2) "a creditor can-

not recover in a proceeding against one indebted to the debtor of the creditor when the indebtedness of the defendant in the action is represented by a negotiable instrument."

If we assume that these contentions, abstractly considered, accurately state the law as applied to one state of facts, they do not apply to the facts of this case if our conclusions hereinbefore stated are correct. The assignment is overruled.

The fifth assignment is as follows:

"The court erred in awarding plaintiff title to and possession of said money, in that it was represented by a negotiable cashier's check in the possession of James E. Galbraith at the time of his death in New York, there resident, and was personal property, and descended by virtue of the law of descent and distribution of the state of New York, and was not subject to claims by his divorced wife of the character asserted in this suit."

Under this assignment we have the following proposition: .

"Where a resident of New York state dies there, leaving by will all his property, real, personal, and mixed, to executors, one of whom qualified and acted as such, and the laws of the state of New York provide that divorced wives have not an interest in the estate of their former husbands, such laws control the distribution of the estate of such decedents, and a former wife cannot recover such an interest in the courts of the state of Texas."

In answer to the foregoing assignment and proposition, as well as to all the assignments presented in appellants' brief, the appellee makes the following counter proposition:

"In interpleaders each claimant is in a position similar to that of plaintiff in other possessory actions where the recovery must be on the strength of their own title rather than on the weakness of their adversary's title; and, none of the appellants having shown any right to recover any judgment for any part of the money in controversy, they can have no further concern in the matter."

The first part of the counter proposition is copied literally from an opinion of the Supreme Court of Georgia in the case of Conway v. Caswell, 121 Ga. 254, 48 S. E. 956, 2 Ann. Cas. 269, and the latter portion is from a decision of the Circuit Court of Appeals in McNamara v. Provident Sav., etc., Society, 114 Fed. 913, 52 C. C. A. 530.

[4] It will be remembered that the bank, claiming to be only a stakeholder of the fund, interpleaded the parties claiming to own it. Each then occupied the position of plaintiff in the claim for the fund, and would have become entitled to it only upon showing a good title thereto. It was not enough that the adversary party had no right of recovery. The sole claim of appellants is based on the ground that they are the executors and devisees of Galbraith. It is not alleged in their pleadings that there is no administration upon his estate in Texas, nor is it alleged by them that there is no necessity for administration. It was admitted at the trial that no administration upon his estate had ever been opened in Texas, and that his will had not been probated in Texas. In Hynes v. Winston, 54 S. W. 1069, it is held that the allegations of plaintiffs, suing as heirs, that there was no administration upon the estate of Hynes in Texas, and that there was no necessity for such administration, were sufficient to authorize the parties suing as heirs to maintain the suit. But in Western Union Tel. Co. v. Kauffman, 107 S. W. 630, it is said:

"By the terms of the statute, the heir is authorized to maintain the suit only in the event there is no administration and no necessity therefor. It is well settled that the heir's petition should contain allegations to this effect, showing his right to sue. G., H. & S. A. Ry. Co. v. Kelley, 26 S. W. 470; H. & T. C. Ry. Co. v. Rogers [15 Tex. Civ. App. 680] 39 S. W. 1112. And it is equally true that the proof must sustain such allegations. In the present case there was neither allegation nor proof upon the subject."

[5] It follows that the legatees and heirs of Galbraith, having failed to make the necessary allegations and proof to authorize them to maintain this suit, cannot recover, nor are they in a position to complain of the judgment that was rendered.

[6] It is equally clear, we think, that neither Baber nor Dobson, as executors, have any standing in the courts of this state to maintain any claim for the fund. It is admitted that neither of them has ever qualified as executor or administrator in Texas, and, indeed, Dobson has never qualified as such executor anywhere. It seems to be well settled that a foreign executor can neither sue nor be sued in the courts of this state. Clarke v. Webster, 94 S. W. 1088. This seems to be practically conceded by appellants, where in their briefs, referring to the authority above cited, they say:

"The case is practically identical with the present one, with reference to the right of an executor under a New York will to sue or be sued in Texas, deciding that he has not the power of suing or being sued. If this is the situation, then the act of the executors in receiving the money (the $818.90 directed to be paid to the executors on account of the expenditures of Galbraith for the protection and benefit of the land) was a nullity, and most certainly cannot bar such rights as the legatees or heirs may have to the property of the vendor or ancestor."

If we are correct in holding that the appellants have no standing in court because of want of the necessary allegations to entitle them to maintain the suit as executors, legatees, and heirs, it follows that none of the assignments hereinbefore discussed, nor the sixth and seventh, which urge the question of estoppel on the part of plaintiff, nor of the eighth, which pleads the statute of limitation of two years to her right of recovery, however well taken they might be under other circumstances, present, as to them, any ground for a reversal of the judgment, and they are severally overruled.

We come now to a consideration of the cross-assignments presented by Mrs. Galbraith, the appellee. The first complains that the court erred in refusing to render judgment in her favor for the entire amount

of money, less court costs, paid into the registry of the court by the bank, and by the second she contends that the court erred in rendering judgment in favor of the executors for $818.90 out of the money so deposited by the bank. It follows from the conclusions hereinbefore stated that the executors were without power to sue and be sued in this state, having neither authority nor liability. This being true, no judgment should have been, or can be, entered in their favor for the fund, or any part of it. The assignment is sustained.

[7] The third cross-assignment complains that the fee of $500 allowed C. R. Wharton, Esq., as attorney ad litem is excessive. We are not prepared to so hold. The court knew the amount of work, as well as the responsibility assumed and performed by Mr. Wharton, and was in better position to determine the sum that would fairly compensate him for his services than this court can possibly be. We overrule the assignment.

[8] The Houston National Exchange Bank by a cross-assignment of error complains that the court erred in refusing to render judgment against the executors, requiring them to surrender the cashier's check issued by the bank to Galbraith and canceling the same. If our conclusion that the foreign executors could not sue or be sued in this state is correct, the court had no power over the executors to require them to surrender the check for cancellation. But independently of this question, we think the action of the court in this regard was not error, for these reasons: It was shown that the check was in Galbraith's possession until he died, and that from that time until about the date of the trial it was in the possession of John F. Baber, the New York executor, and that at the trial it was in the possession of Mr. C. R. Wharton, the attorney ad litem for the nonresident defendants. It is clear that at the time of the trial it had not been acquired by an innocent purchaser for value from either Galbraith or his executor. It was stated in oral argument by Mrs. Galbraith's counsel, and not controverted, that when the executor, Baber, undertook to collect the check from the bank, which was after Street & Graves had sued out the injunction restraining the bank from paying the same, there was written across the face of the check in red ink the words "Payment stopped by injunction." We think that with the notice thus given by the language on the face of the check it would hardly be possible for any one who might hereafter purchase the same to contend in good faith that he was an innocent purchaser. It seems to us that this affords the bank adequate protection against a double payment.

The judgment of the court below will be reformed so as to deny to the executor of Galbraith any recovery, and so as to award to the appellee, Bessie Campbell Galbraith,

the amount awarded to her in the court below, plus the sum awarded to the executors, and, as so reformed, is affirmed.

Reformed and affirmed.